**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

IN RE: NEW INDY EMISSIONS LITIGATION     )
                                          )
                                          )     No. 0:21-cv-1480-SAL
                                          )     No. 0:21-cv-1704-SAL
                                          )
                                          )
                                          )
                                          )
                                          )

**MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERTS
<u>DR. VIZUETE AND DR. SODERBERG</u>**

## TABLE OF CONTENTS

                                                                                                                      **Page**

I. LEGAL STANDARD ........................................................................................................ 1

II. THE COURT SHOULD EXCLUDE THE REPORT AND TESTIMONY OF DR. VIZUETE IN ITS ENTIRETY BECAUSE HE RELIES ON ASSUMPTIONS WITHOUT A PROPER BASIS IN THE RECORD AND THE METHODOLOGY AS HE APPLIED IT TO THIS CASE IS FLAWED AND UNSCIENTIFIC. ................................................................................................................ 2

    A.    Dr. Vizuete did not have sufficient facts or data to reach his conclusions because he relied on DHEC odor reports without performing any independent analysis. ............................................................................................... 3

    B.    Dr. Vizuete's HYSPLIT simulations did not appropriately apply the data he had on the time and the location of the DHEC odor reports. ............................ 4

    C.    Dr. Vizuete's HYSPLIT simulations did not use sufficient facts or data based on the selection of days or clusters of DHEC odor reports. ........................ 5

    D.    Dr. Vizuete did not apply the same intellectual rigor in his report as expected in his field when he failed to consider, disclose, and explain the negative results from an unreported sixth simulation. ........................................... 6

    E.    As a result of the missing sixth simulation, Dr. Vizuete's new opinion is unclear and confusing to the jury. ........................................................................ 8

    F.    Dr. Vizuete's maps are misleading to the jury and should be excluded. ............... 9

III. THE COURT SHOULD EXCLUDE THE REPORT AND TESTIMONY OF DR. SODERBERG AS TO HIS FIRST OPINION BECAUSE HE RELIES ON ASSUMPTIONS WITHOUT A PROPER BASIS IN THE RECORD. ......................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)............................................................................................... *passim*

*Fail-Safe, LLC v. A.O. Smith Corp.*,
   744 F. Supp. 2d 870 (E.D. Wis. 2010).......................................................................... 7-8

*Funderburk v. S.C. Elec. & Gas Co.*,
   395 F. Supp. 3d 695 (D.S.C. 2019)............................................................................2, 3, 10

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)..........................................................................................................6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).......................................................................................................1, 2

*Sardis v. Overhead Door Corp.*,
   10 F.4th 268 (4th Cir. 2021) ........................................................................................... 1-2

*Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*,
   29 F.3d 137 (4th Cir. 1994) ......................................................................................3, 5, 10

*United States v. Barnette*,
   211 F. 3d 803 (4th Cir. 2000) ...........................................................................................7

**Other Authorities**

Federal Rule of Evidence 403.................................................................................................9, 10

Federal Rule of Evidence 702...................................................................................................1, 2

Federal Rule of Evidence 702(b) .................................................................................................6

Federal Rule of Evidence 702(d) ..............................................................................................4, 5

## INTRODUCTION

Plaintiffs seek to offer the testimony of two air modeling experts. They are:

1) William Vizuete, PhD, whose report is attached as Exhibit 1 (the "Vizuete Expert Rep.") and deposition transcript is attached as Exhibit 2 (the "Vizuete Dep. Tr.")

2) Keir Soderberg, PhD, whose report is attached as Exhibit 3 (the "Soderberg Expert Rep.") and deposition transcript is attached as Exhibit 4 (the "Soderberg Dep. Tr.")

Dr. Vizuete seeks to offer an opinion that certain clusters of unverified DHEC odor reports can be plausibly traced back to the Mill. Dr. Soderberg seeks to offer an opinion that the unverified DHEC odor reports can be compiled on maps to create the Property Damages Class Area.

The Court should exclude the opinion of Dr. Vizuete because he relied on unverified DHEC odor reports and because the methodology he applied is flawed and unscientific. The Court should also exclude the first opinion of Dr. Soderberg because he also relied on unverified DHEC odor reports to generate maps that describe a main area of the DHEC odor reports. Because the opinions offered here are not reliable, their opinions should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## ARGUMENT

**I.     Legal Standard**

The Court serves as an evidentiary gatekeeper, charged with screening out irrelevant and unreliable expert evidence. *See, e.g.*, *Daubert*, 509 U.S. at 597, *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (Rule 702 applies not only to "scientific" testimony, but to all expert testimony.); *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 282 (4th Cir. 2021) ("After the Supreme Court's seminal decisions in *Daubert* and *Kumho Tire*, Rule 702 was amended

specifically to 'affirm[ ] the trial court's role as gatekeeper.'"). Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* includes four factors the Court *may* use to evaluate expert testimony in whether the scientific theory or technique (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the relevant scientific community. *See Daubert*, 509 U.S. at 592–94.

The party offering expert testimony bears the burden of establishing the foundational elements of admissibility by a preponderance of evidence, including both (1) that the expert is qualified and (2) the testimony to be offered is relevant and based on a reliable foundation. *Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 705-06 (D.S.C. 2019).

**II.     The Court Should Exclude The Report And Testimony Of Dr. Vizuete In Its Entirety Because He Relies On Assumptions Without a Proper Basis In The Record And The Methodology As He Applied It To This Case Is Flawed And Unscientific.**

Dr. Vizuete used a computer modeling tool, HYSPLIT, to generate simulations of the wind patterns at a particular time in an attempt to connect certain clusters of the DHEC odor reports (the "receptor") back to the Mill (the "source"). Ex. 1, Vizuete Expert Rep. App'x B at 5. A key component of his report are four maps reflecting three dates of DHEC odor reports. These maps purport to show that the DHEC odor reports had a HYSPLIT trajectory that plausibly passed within

2

3 kilometers of the Mill. While HYSPLIT may be a widely-used methodology, the inputs and outputs that Dr. Vizuete applied render his opinion unreliable and unscientific. Dr. Vizuete relied on unverified DHEC odor reports, generated location data they did not include, cherry-picked a limited set of DHEC odor reports based on minimal if any scientific basis, changed his opinion, allowed another expert unfamiliar with HYSPLIT to modify his ultimate maps, and included misleading data on the maps in his report. Accordingly, his opinions should be excluded.

### A. Dr. Vizuete did not have sufficient facts or data to reach his conclusions because he relied on DHEC odor reports without performing any independent analysis.

An expert's reliance on a source without any of his own analysis may be sufficient to exclude his testimony under the *Daubert* factors because the expert's methodology or the potential rate of error are impossible to analyze. *Funderburk*, 395 F. Supp. 3d at 721-22 (*citing Nease v. Ford Motor Co.*, 848 F.3d 219, 232-33 (4th Cir. 2017)). "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *See Tyger Constr. Co. Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 143 (4th Cir. 1994).

The sole source of data for the HYSPLIT simulations was the DHEC odor reports. Ex. 1, Vizuete Expert Rep. App'x B at 5. As Defendants explain in their contemporaneously-filed motion in limine, the DHEC odor reports are not sufficiently reliable to serve as the basis of any expert opinion because they are anonymous, unverified by any state agency, self-selected, unrepresentative of the population, and lacking any controls to limit repeat odor reports. When Dr. Vizuete performed the HYSPLIT simulations based off of the DHEC odor reports, he assumed incorrectly that DHEC took steps to validate or "quality assure" the odor reports. Ex. 2, Vizuete Dep. Tr. at 76:17-82:16. But DHEC did not do so. Ex. 2, Vizuete Dep. Tr. Ex. 3 at 2. An expert's reliance on data without performing any validation can be grounds to exclude their conclusions. The Court should exclude Dr. Vizuete's testimony because all of the HYSPLIT simulations rely

3

solely on the unverified DHEC odor reports. In addition, the Court should exclude his opinion because his misplaced reliance on the DHEC odor reports renders his opinion speculative and not supported by the evidence.

> **B.    Dr. Vizuete's HYSPLIT simulations did not appropriately apply the data he had on the time and the location of the DHEC odor reports.**

Even if the DHEC odor reports were reliable, Dr. Vizuete's use of them misinterpreted two critical components—the time and location of the odor report. First, according to Dr. Vizuete, the HYSPLIT simulations are limited in time. Ex. 2, Vizuete Dep. Tr. at 72:2-12. In other words, to trace a DHEC odor report from a given time, HYSPLIT can only provide data about that particular odor report, and not odor reports that occurred before or after (outside of an approximately 30-minute window). Ex. 2, Vizuete Dep. Tr. at 121:15-24. The five simulations discussed in Dr. Vizuete's report were based on data collected at specific times of day. Ex. 1, Vizuete Expert Rep. App'x B at 6; Ex. 2, Vizuete Dep. Tr. at 120:2-7. However, the report states there were at least 100 odor reports made each day. Ex. 1, Vizuete Expert Rep. App'x B at 6. Dr. Vizuete does not clarify in his report whether those hundreds of odor reports occurred at or near the times of day identified in his report, even though he testified the HYSPLIT simulation requires a specific time.

For example, even Dr. Vizuete was confused in his deposition as to the meaning of the 9 a.m. label on the Figure 5 map in his report because the HYSPLIT table showed it was based on an 11 a.m. DHEC odor report and working backward 6 hours. Ex. 2, Vizuete Dep. Tr. at 121:2-14. Dr. Vizuete's use of the unverified DHEC odor report's time in HYSPLIT does not follow his proper and usual methodology, and under Federal Rule of Evidence 702(d), his report should be excluded because he failed to reliably apply the HYSPLIT model to the facts of the case.

Second, Dr. Vizuete misinterpreted the location of the DHEC odor reports. An expert's judgment alone without accompanying analysis is not sufficient to survive a motion to exclude.

4

*See Tyger Constr. Co. Inc.*, 29 F.3d 137 at 143. Consistent with their general unreliability, the DHEC odor reports—as provided to the parties by DHEC—do not include addresses, but were redacted to just include (in most instances) a street name. Because there was not a specific address associated with an odor report, Dr. Vizuete used the midpoint of the street to calculate longitude and latitude—regardless of whether the street is a few blocks long, or over 10 miles long, and only supplemented with zip code data for very long streets. Ex. 1, Vizuete Expert Rep. App'x B at 5; Ex. 2, Vizuete Dep. Tr. at 143:6-145:6. Dr. Vizuete testified about the accuracy of this calculation: "In the center, you're a 50/50 chance. It's an approximation. So it's – it's a best guess estimate on judgment and intuition, given the data that we have, what would be an estimate." Ex. 2, Vizuete Dep. Tr. at 142:7-15. Dr. Vizuete admitted that he had never used "estimates of locations" in HYSPLIT simulations. Ex. 2, Vizuete Dep. Tr. at 146:19-23. Again expert intuition lies close to reliance on an expert's judgment alone, which is not sufficient to admit an expert's report. *See Tyger Constr. Co.*, 29 F.3d at 143.

Additionally, under *Daubert*'s analysis of a known or potential rate of error, a "50/50 chance" on the accuracy of the location fails, especially because that is the chance of error and says nothing about the magnitude of the error for very long streets. While a HYSPLIT model may be a generally accepted tool for an expert to use, Dr. Vizuete used it differently for this case in two significant ways, rendering his use of the tool unreliable.

For these reasons, Dr. Vizuete's opinion should be excluded under *Daubert* and Federal Rule of Evidence 702(d).

    **C.    Dr. Vizuete's HYSPLIT simulations did not use sufficient facts or data based on the selection of days or clusters of DHEC odor reports.**

Dr. Vizuete also used the DHEC odor reports inappropriately by selecting days or clusters without a scientific basis other than his own judgment and that of Plaintiffs' counsel. Courts may

5

exclude expert opinions that "are connected to existing data only by the *ipse dixit* of the expert" because "there is simply too great an analytical gap between the data and opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). For his analysis, Dr. Vizuete used the days with the highest number of DHEC odor reports. Ex. 1, Vizuete Expert Rep. App'x B at 6. Dr. Vizuete did not explain why days with the highest number of odor reports, rather than days with, for example, an average number of odor reports, are the relevant dataset. In addition, the choice of clusters of DHEC odor reports was not based on any scientific rationale, but on his and Plaintiff's counsel's subjective determination that a cluster was "unusual" or odor reports were "together." Ex. 2, Vizuete Dep. Tr. at 96:9-97:2. Putting aside that Plaintiffs' counsel are nowhere close to experts on HYSPLIT simulations, the Dr. Vizuete's use of subjectively "unusual" clusters as the relevant datapoints renders his opinion unreliable.

Some of these biases potentially could have been limited if Dr. Vizuete used a larger data set. Plaintiffs are seeking to certify a class for a time period of almost three years. ECF No. 180, at 2-3. Yet, Dr. Vizuete analyzed six clusters of DHEC odor reports, only included in his report to the Court his analysis of five of those clusters, which reflected just ***three days*** in the time period of almost ***three years***. Ex. 1, Vizuete Expert Rep. App'x B at 6. Dr. Vizuete's explanation for the limited data set for the HYSPLIT simulations was merely due to the budget Plaintiffs' counsel gave him. Ex. 2, Vizuete Dep. Tr. at 133:4-11. Under Federal Rule of Evidence 702(b), analysis of three days is not sufficient to provide testimony to reflect a time period of almost three years.

    **D.**     **Dr. Vizuete did not apply the same intellectual rigor in his report as expected in his field when he failed to consider, disclose, and explain the negative results from an unreported sixth simulation.**

Dr. Vizuete stated in his report "Five (5) HYSPLIT simulations were completed to determine the source of air parcels at a given receptor." Ex. 1, Vizuete Expert Rep. App'x B at 5. Plaintiffs cited Dr. Vizuete's HYSPLIT simulations in their brief for class certification and that he

performed it on "certain dates." ECF No. 180, at 10 & n.5. These simulations led to Dr. Vizuete's conclusion that "the HYSPLIT model predicts air parcels that originate from the location of the New-Indy Catawba paper mill plant facility heading in the northwest, north, and northeast directions to the clusters of odor complaints." Ex. 1, Vizuete Expert Rep. App'x B at 13.

In his deposition, however, Dr. Vizuete acknowledged that he actually performed *six* HYSPLIT simulations, not five. Ex. 2, Vizuete Dep. Tr. at 129:15-130:3. This sixth simulation that he excluded from his report showed that that the air particles that would have reached the "receptor" (i.e. the cluster of DHEC odor reports) did not come from within a mile of the Mill. In other words, the sixth simulation that Dr. Vizuete chose not to include in his report *contradicts* his conclusion that the clusters of odor reports were associated with air particles that passed over the Mill. When questioned about why the sixth simulation was excluded, Dr. Vizuete admitted it was a "consensus decision" made with Plaintiffs' counsel. Ex. 2, Vizuete Dep. Tr. at 130:16-19. Dr. Vizuete's decision to use only the data that supports his opinions, and to not even disclose the data that undermines them, renders his opinions biased and unreliable.

Under the scientific method that Dr. Vizuete uses, and under the standard Dr. Vizuete would apply as a peer reviewer and faculty advisor to graduate students, a researcher must consider, disclose, and explain negative results. Ex. 2, Vizuete Dep. Tr. at 57:20-59:5. An intentional failure to disclose negative results is "something of real concern" for a PhD candidate, and Dr. Vizuete would "not sign off on that approach." Ex. 2, Vizuete Dep. Tr. at 61:14-63:15. Thus, under *Daubert* he failed to apply the same "intellectual vigor" in this report as he would use in his field, and his opinion should be excluded. *See United States v. Barnette*, 211 F. 3d 803, 815-816 (4th Cir. 2000); *see also Fail-Safe, LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 870 (E.D. Wis.

7

2010) (excluding expert that "cherry picked" data that supported his conclusion, ignored contrary evidence, and failed to explain why he chose the data used in his analysis).

### E. As a result of the missing sixth simulation, Dr. Vizuete's new opinion is unclear and confusing to the jury.

In his deposition, in an attempt to avoid the misrepresentation he created by failing to include the sixth simulation in his report, Dr. Vizuete backtracked and testified that he was only asked to determine whether it was "plausible" that DHEC odor reports surrounding the Mill could be traced back to the Mill. Ex. 2, Vizuete Dep. Tr. at 128:1-7. Under this new opinion found nowhere in his report, Dr. Vizuete testified that he could explain the negative result of the sixth simulation and that the negative result would not impact his opinion. Ex. 2, Vizuete Dep. Tr. at 93:1-16. He further explained that his assignment was to find "examples" where clusters of DHEC odor reports could be traced back to the Mill. Ex. 2, Vizuete Dep. Tr. at 93:8-94:12. This new opinion should be excluded for two reasons.

First, this "plausibility" standard is not in his report, and neither Dr. Vizuete nor Plaintiffs have attempted to amend his report. Dr. Vizuete's report states that he was asked "where the wind originated from that gave rise to multiple odor complaints." Ex. 1, Vizuete Expert Rep. at 2. Nowhere in his report does the term "plausible" appear. The report does not consider error at all. The same as to "examples." Instead, his conclusion as stated in the report is: "To a reasonable degree of scientific certainty, the HYSPLIT model predicts air parcels that originate from the location of the New-Indy Catawba paper mill plant facility heading in the northwest, north, and northeast directions to the clusters of odor complaints." Ex. 1, Vizuete Expert Rep. App'x B at 13.

Second, if, as Dr. Vizuete belatedly claimed in his deposition, he was only offering an opinion regarding "plausibility," the opinion should be excluded because it will not aid the factfinder. There are no known or possible rates of error to attribute to "plausible." While Dr.

8

Vizuete's opinion as stated in his report at least included a vague "reasonable degree of scientific certainty," plausibility has no such cover. Under the *Daubert* factor of a known or potential rate of error, Dr. Vizuete's new opinion as explained in his report should also be excluded.

**F.     Dr. Vizuete's maps are misleading to the jury and should be excluded.**

Even if Dr. Vizuete's use of data, his use of the HYSPLIT model, and his evolving opinion were admitted, at minimum, his maps should be excluded because of the likelihood they would confuse the jury. Expert evidence still may be excluded "if its probative value is substantially outweighed by the danger of . . . misleading the jury." Fed. R. Evid. 403. In his report, Dr. Vizuete included four maps identifying the locations of the DHEC odor reports with yellow dots, the location of the Mill, and a blue line rendered from the HYSPLIT simulation with an accompanying green buffer zone 3 kilometers wide. Ex. 1, Vizuete Expert Rep. App'x B at 9-12. These maps are misleading in two ways.

First, Dr. Vizuete does not understand the meaning of certain information on at least one of his maps. He admitted that Dr. Soderberg, not him, labeled Figure 5 "9 a.m." in his report. Ex. 2, Vizuete Dep. Tr. 111:3-8; Ex. 1, Vizuete Expert Rep. App'x B at 10. And Dr. Vizuete could not explain why Dr. Soderberg did so when the DHEC odor reports for that map were from 11 a.m. Ex. 2, Vizuete Dep. Tr. 110:10-111:8, 121:2-14. According to Dr. Vizuete's testimony then, Figure 5 is not about DHEC odor reports from around 9 a.m. as the map explains, but from around 11 a.m.

Second, the maps do not accurately indicate the DHEC odor reports included in each simulation. The yellow dots on the maps indicate locations of DHEC odor reports included in the HYSPLIT simulation, as well as locations for other DHEC odor reports excluded from the simulation because they were not registered within 30 minutes of the starting point of the HYSPLIT stimulation. Ex. 2, Vizuete Dep. Tr. at 123:13-124:21. There is nothing in the maps or

9

in Dr. Vizuete's report that explains which DHEC odor reports were included in the analysis and which were not. Ex. 1, Vizuete Expert Rep. App'x B at 9-12.

Dr. Vizuete did not explain in his report or in his deposition either the meaning of Dr. Soderberg's 9 a.m. label or the reason to include irrelevant DHEC odor reports on the maps. If Dr. Vizuete cannot explain the maps and standards in his own report, then a jury would also be misled. Accordingly the maps should be excluded under Federal Rule of Evidence 403.

**III.    The Court Should Exclude The Report and Testimony Of Dr. Soderberg As To His First Opinion Because He Relies On Assumptions Without A Proper Basis In The Record.**

Similar to Dr. Vizuete, the DHEC odor reports are the underlying basis for Dr. Soderberg's conclusions in his Opinion 1. An expert's opinion should be excluded if it relies on speculative assumptions that do not bear out in the record or if it relies on a source without providing any analysis. *Tyger Constr. Co.*, 29 F.3d at 143 (citing *Eastern Auto Distribs., Inc. v. Peugeot Motors of Am.*, 795 F.2d 329, 337 (4th Cir. 1986)); *Funderburk*, 395 F. Supp. 3d at 721-22 (*citing Nease v. Ford Motor Co.*, 848 F.3d 219, 232-33 (4th Cir. 2017)).

To be precise, Dr. Soderberg created weekly maps of DHEC odor report locations by extracting stills from YouTube videos from DHEC. From these, Dr. Soderberg estimated the location of DHEC odor reports. Ex. 3, Soderberg Export Rep. at 3 & Att. D. Dr. Soderberg testified that he relied on maps generated by DHEC odor reports, but he "can't speak to the uncertainties" in making the maps. Ex. 4, Soderberg Dep. Tr. at 113:9:21. Neither he nor DHEC can quantify a known or potential rate of error. Ex. 4, Soderberg Dep. Tr. at 113:22-114:8; Ex. 5, Scott Reynolds Dep Tr. at 44:22-45:10 (the maps are "accurate but not precise."). The Court should exclude Dr. Soderberg's testimony on Opinion 1 rendered from his reliance on the DHEC odor reports because this reliance renders his methodology and potential rate of error impossible to analyze. In addition,

the Court should exclude his opinion because, like Dr. Vizuete, his reliance on the DHEC odor reports renders his opinion speculative and not supported by the record.

## CONCLUSION

For the foregoing reasons, New-Indy respectfully requests that the Court exclude the testimony of Plaintiffs' expert William Vizuete in its entirety and exclude the testimony of Plaintiffs' expert Keir Soderberg as to his first opinion.

Respectfully submitted,

BY:     */s/ Tina Cundari*
Tina Cundari (Fed. ID No. 9679)
Austin T. Reed (Fed. ID No. 13405)
SMITH ROBINSON HOLLER DUBOSE MORGAN, LLC
2530 Devine Street
Columbia, SC 29205
Phone: 803.254.5445/Fax: 803.254.5007
tina.cundari@smithrobinsonlaw.com
austin.reed@smithrobinsonlaw.com

Peter M. McCoy, Jr. (Fed ID No. 9896)
MCCOY LAW GROUP LLC
15 Prioleau Street
Charleston, SC 29401
Phone: 843.459.8835/Fax: 843.459.8834
peter@mccoylawgrp.com

MORGAN, LEWIS & BOCKIUS LLP
Scott T. Schutte (admitted *pro hac vice*)
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Phone: 312.324.1000/Fax: 312.324.1001
scott.schutte@morganlewis.com

John McGahren (admitted *pro hac vice*)
502 Carnegie Center
Princeton, NJ 08540-6241
Phone: 609.919.6600/Fax: 609.919.6701
john.mcgahren@morganlewis.com

Debbie Carfora (admitted *pro hac vice*)
1111 Pennsylvania Ave. NW
Washington, DC 20004
Phone: 202.739.3000/Fax: 202.739.3001
debbie.carfora@morganlewis.com

Jamie Huffman (admitted *pro hac vice*)
1717 Main St., Suite 3200
Dallas, TX 75201
Phone: 214.466.4115/Fax: 214.466.4001
jamie.huffman@morganlewis.com

*Counsel for Defendants*
*New-Indy Catawba LLC and New-Indy*
*Containerboard LLC*