# Exhibit 4 –Deposition of Dr. Soderberg

Page 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

_____

IN RE:  NEW INDY                )Case Nos.
EMISSIONS LITIGATION            )0:21-cv-01480-SAL
                                )0:21-cv-01704-SAL
                                )
                                )
_____     )


VIDEOTAPED DEPOSITION OF
KEIR SODERBERG, Ph.D.
October 3, 2023
10:11 a.m.







Reported by:  Bonnie L. Russo
Job No. 6129608

Page 2

1  Videotaped Deposition of Keir Soderberg, Ph.D.
2  held at:
3
4
5
6            Morgan, Lewis & Bockius, LLP
7            1111 Pennsylvania Avenue, N.W.
8            Washington, D.C.
9
10
11
12
13
14
15
16
17
18  Pursuant to Notice, when were present on behalf
19  of the respective parties:
20
21
22

Page 3

```
 1      APPEARANCES:
 2
 3      On behalf of the Plaintiffs:
 4           BRENT CERYES, ESQUIRE
 5           BAIRD MANDALAS BROCKSTEDT & FEDERICO
 6           2850 Quarry Lake Drive, Suite 220
 7           Baltimore, Maryland 21209
 8           bceryes@bmbfclaw.com
 9
10
11      On behalf of the Defendants:
12           SCOTT T. SCHUTTE, ESQUIRE
13           MORGAN, LEWIS & BOCKIUS, LLP
14           110 North Wacker Drive
15           Chicago, Illinois 60606
16           scott.schutte@morganlewis.com
17                   -and-
18           JAMIE HUFFMAN, ESQUIRE
19           MORGAN, LEWIS & BOCKIUS, LLP
20           1717 Main Street, Suite 3200
21           Dallas, Texas 75201
22           jamie.huffman@morganlewis.com
```

Page 4

1   APPEARANCES (CONTINUED):
2
3
4   Also Present:
5   Gene Aronov, Videographer
6
7   Also Present Via Remotely:
8   Shanon Peek, Smith Robinson
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Page 5

```
 1                    I N D E X
 2    EXAMINATION OF KEIR SODERBERG, Ph.D.        PAGE
 3    BY MR. SCHUTTE                              8
 4                                                244
 5    BY MR. CERYES                               237
 6
                           EXHIBITS
 7
      Exhibit 1    Notice of Videotaped           11
 8                 Deposition of
                   Keir Soderberg, Ph.D.
 9
      Exhibit 2    Rule 26(A)(2)(b)               12
10                 Report of Keir Soderberg
11    Exhibit 3    S.S. Papadopulos &             69
                   Associates, Inc. Profile
12                 of Keir Soderberg, Ph.D.
13    Exhibit 4    Declaration of Scott Reynolds  86
14    Exhibit 5    New Indy Odor Reports Map      123
15    Exhibit 6    Spreadsheets                   157
16    Exhibit 7    Google Maps of Catawba         184
17    Exhibit 8    Rule 26(A)(2)(b) Report of     205
                   William Vizuete, Ph.D.
18
      Exhibit 9    Spreadsheets                   212
19
      Exhibit 10   Spreadsheets                   215
20
      Exhibit 11   Spreadsheets                   219
21
      Exhibit 12   Spreadsheets                   230
22
      (Exhibits bound separately.)
```

Page 6

1        P R O C E E D I N G S

2              (10:11 a.m.)

3

4            THE VIDEOGRAPHER:  Good morning.

5            We are going on the record at

6    a.m. on October 3, 2023.

7            Please note that the microphones are

8    sensitive and may pick up whispering and

9    private conversations.  Please mute your phones

10   at this time.  Audio and video recording will

11   continue to take place unless all parties agree

12   to go off the record.

13            This is Media Unit 1 of the

14   video-recorded deposition of Dr. Keir Soderberg

15   taken by counsel for defendants in the matter

16   of In Re:  New-Indy Emissions Litigation filed

17   in the United States District Court, District

18   of South Carolina, Rock Hill Division, Case

19   No. 0:21-cv-01480-SAL and 0:21-cv-01074-SAL.

20            The location of this deposition is

21   Morgan, Lewis & Bockius, 1111 Pennsylvania

22   Avenue, Northwest, Washington, D.C.

Page 112

1     Q.    The person at DHEC.
2     A.    Well, I think Scott Reynolds's
3  declaration indicated that the -- the
4  spreadsheet was automatically populated from
5  the report form.  So in that case, someone at
6  the department -- at DHEC would not have typed
7  in the address.
8     Q.    Right.  But when it geo -- how is
9  the geocoding done?
10    A.    Well, if you have the addresses --
11 well, I wasn't involved in this process, so I
12 can't say --
13    Q.    Right.  So we don't know.  We don't
14 know.
15    A.    But in general if you have a
16 spreadsheet of addresses, you wouldn't retype
17 the addresses.  You would use that spreadsheet
18 as direct information to geocode from.
19    Q.    But you don't know whether DHEC did
20 that or not?
21    A.    I don't know.
22    Q.    Okay.  My point -- again, this is

Page 113

1    not a criticism of you.  But my point is that
2    the data that you were working with, which
3    starts from the YouTube video, there is a lot
4    of uncertainty about the quality of that data,
5    isn't there?
6              MR. CERYES:  Objection.
7              BY MR. SCHUTTE:
8         Q.   Let me modify the question.
9              The data that you were working with
10   when you started your analysis using the
11   YouTube videos, there is uncertainty about the
12   quality of that data, isn't there?
13        A.   So there are different ways to
14   answer that.
15             When I look at a frame -- you know,
16   one of those weekly maps, I can look at how
17   crisp the points are, how accurately I can find
18   the center of that point, how accurately I can
19   resolve different points from one another.
20             The data that went into making that
21   map, I can't speak to the uncertainties.
22        Q.   Okay.  And you haven't tried to

Page 114

1    quantify the known or potential rate of error
2    with respect to those uncertainties, correct?
3         A.    To -- to which uncertainties?
4         Q.    The uncertainty in the quality of
5    the data that you received in the form of the
6    YouTube video?
7         A.    There was no way for me to evaluate
8    the uncertainties.
9         Q.    Okay.
10        A.    -- of the -- in the quality of the
11   data that went into the YouTube vehicle.
12        Q.    Have you ever in your professional
13   career relied on data where you were not able
14   to evaluate the quality of the data that went
15   into the model?
16        A.    So often in consulting or litigation
17   about chemical contamination, there are, for
18   example, old maps where samples were collected
19   in a certain location.  Maybe those are
20   hand-drawn maps.  Maybe the location is hard to
21   read.  And so there is some uncertainty with
22   those old, poor quality maps.  And so, yes, I

Page 115

1  have used that data, you know, that type of
2  data.
3      Q.  But in those situations, you can
4  evaluate and quantify the uncertainty.  You can
5  say, oh, gosh, I've got old maps.  I can look
6  at them myself, but you actually have the
7  ability -- just like the hypothetical satellite
8  image of the vegetation, you can go back and
9  sort of do a check and balance on -- even
10 though there is some uncertainty, you can go
11 back and review it, correct?
12     A.  Not in every case.  The map may just
13 be legible to the point where you know that the
14 sample was taken in a general vicinity of a
15 site and you know that there is data associated
16 with that sample, and so you know the data are
17 of a certainty quality.  The location may be --
18     Q.  Okay.
19     A.  -- may be less certain because of
20 the poor quality of the map.
21     Q.  Yeah.  That -- that -- when you have
22 a situation like that, does that impact your