**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| | ) | Case No.:  0:21-CV-01480-SAL |
| IN RE: NEW INDY EMISSIONS LITIGATION | ) | 0:21-CV-01704-SAL |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS**
**SETTLEMENT AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES.............................................................................................. iii

INTRODUCTION ............................................................................................................... 1

MATERIAL TERMS OF THE PROPOSED CLASS SETTLEMENT ................................. 3

    A.  Consideration ................................................................................................... 3

    B.  Proposed Settlement Class Definition .............................................................. 3

    C.  Allocation of Settlement Proceeds ................................................................... 4

    D.  Court Appointments ......................................................................................... 5

        1.   Notice Administrator .................................................................................. 5

        2.   Claims Administrator.................................................................................. 5

        3.   Special Master and Claims Adjudicator ..................................................... 6

    E.  Notice to Class Members .................................................................................. 7

    F.  Allocation Methodology ................................................................................... 8

    G.  Payment of Attorneys' Fees ........................................................................... 10

    H.  Other Settlement Agreements with New Indy ................................................ 10

ARGUMENT .....................................................................................................................11

    A.  This Proposed Settlement Should be Preliminarily Approved under Rule 23(e)(2)......... 12

        1.   The Settlement is Fair............................................................................... 13

            a.   The Advanced Posture of the Case Supports the Fairness of this Settlement. .... 13

            b.   Discovery was closed, permitting the Parties a full assessment of the strengths and weakness of the claims and defenses............................................ 14

            c.   The Proposed Settlement Was Negotiated at Arm's-Length. ............................. 14

            d.   Class Counsel and Counsel for the Defendants Have Decades of Experience Litigating Complex Cases, Including Environmental and Class Actions. .......... 15

        2.   The Settlement Provides Adequate Compensation to the Class.................................. 16

            a.   The Settlement is reasonable considering the relative strength and weakness of the claims and defenses. ............................................................ 16

            b.   The Settlement is Reasonable Given the Anticipated Duration and Expense of Additional Litigation. ....................................................................... 17

            c.   Solvency of the Defendants................................................................................. 18

B. The Proposed Settlement Class Should Be Provisionally Certified Under Federal Rule of Civil Procedure 23. .................................................................................................. 19

   1. The Requirements of Rule 23(a) are satisfied. .......................................................... 19

      a. Ascertainability ................................................................................................ 19

C. Upon Certifying the Settlement Class, the Court Should Appoint Class Counsel and Class Representatives. ..................................................................................................... 26

   1. Appointment of Class Counsel. ................................................................................. 26

   2. Appointment of Class Representatives. ..................................................................... 27

D. The Court Should Commence the Notice Process by Approving the Proposed Form of Notice and Notice Plan, and by Appointing the Notice Administrator. ........................... 27

E. The Court Should Establish a Qualified Settlement Fund ................................................ 28

F. The Court Should Appoint Judge Marina Corodemus (Ret.) as Special Master ............. 29

G. The Court Should Schedule a Final Fairness Hearing. .................................................... 29

CONCLUSION ........................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*1988 Trust for Allen Children Dated 8/8/88*, 28 F.4th 513, 524 (4th Cir. 2022)........................... 23

*Bass v. 817 Corp.,* 2017 U.S. Dist. LEXIS 225380, *5-6 (D.S.C. Sept. 19, 2017) ...................... 15

*Beaulieu v. EQ Indus. Servs., Inc.*, 2009 WL 2208131, at *8 ....................................................... 20

*Case v. French Quarter III LLC*, 2015 WL 12851717, at *8 (D.S.C. July 27, 2015).................. 17

*Comm'ri of Public Works of City of Charleston v. Costco Wholesale Corp.*, 340 F.R.D. 242, 249

  (D.S.C. 2021) ..................................................................................................................... passim

*Crandell v. U.S.*, 703 F.2d 74, 75 (4th Cir. 1983) ........................................................................ 12

*Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) .................................................... 18

*Deiter v. Microsoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006) ................................................ 23

Fed. R. Civ. P. 23(a) ..................................................................................................................... 26

Fed. R. Civ. P. 23(a)(4) ................................................................................................................ 23

*Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) .................................................. 13, 19

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) .................................................. 24

*Gray v. Talking Phone Book*, 2012 U.S. Dist. LEXIS 200804, at *16 (D.S.C. Aug. 10, 2012) ... 16

*Hart v. J.H. Baxter & Co., Inc.*, No. 6:21-cv-00663-MK, 2023 WL 2918632, at *1 .................. 21

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) 12

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2021 WL

  248471, at *1 (D.S.C. Jan. 25, 2021).................................................................... 12, 13, 24, 25

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ............................................................. 2

*In re LandAmerica § 1031 Exch. Servs. Inc. IRS § 1031 Tax Deferred Exch. Litig.*, 2012 U.S.

  Dist. LEXIS 97933, at *5,6 (quoting *Horton , 855 F. Supp. at  827 ) ..................................... 12

*In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234-36 (4th Cir. 2021)................................ 21

*In re: Lumber Liquidators*, 952 F.3d at 484 n.8 ................................................................ 13

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654-55 (4th Cir. 2019) ................................. 19

*Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800-JFA, 2015 U.S. Dist. LEXIS 1765, at

    *24 (D.S.C. Jan. 8, 2015) ................................................................................................ 24

*Peters v. Aetna Inc.*, 2 F.4th 199, 241-42 (4th Cir. 2021) ............................................................ 19

*Reed v. Big Water Resort, LLC*, 2016 U.S. Dist. LEXIS 187745, at *14 (D.S.C. May 26, 2016)

    (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2nd Cir. 1998)) ............. 12

*Robinson v. Carolina First Bank NA*, 2019 U.S. Dist. LEXIS 26450, at *27 (D.S.C. Feb. 14,

    2019) ............................................................................................................................... 15

*Rowe v. E.I. du Pont de Nemours & Co, 262 F.R.D. 451, 456 (D.N.J. 2009)* ............................ 22

*S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 345-46 (D.S.C. 1991) .............................................. 15

*Stillmock v. Weis Mkts., Inc.,* 385 F. App'x. 267, 273 (4th Cir. 2010) (quoting *Smilow v. SW Bell*

    *Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)) ..................................................... 25

*Sullivan v. Saint-Gobain Performance Plastics Corp., 2019 WL 8272995, at *5 (D. Vt. Aug. 23,*

    *2019)* .............................................................................................................................. 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ....................................................... 21

*Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005) ................................................ 21

*Zimmerman v. 3M Co. et al.*, 1:17-cv-01062 ............................................................................... 6

### Rules

Fed. R. Civ. P. 23(a) ................................................................................................... 18, 22

Fed. R. Civ. P. 23(a)(1) .................................................................................................... 20

Fed. R. Civ. P. 23(a)(2) .................................................................................................... 20

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 22

Fed. R. Civ. P. 23(b)(3) ........................................................................................................ 24, 25

Fed. R. Civ. P. 23(e) ............................................................................................................... 2, 10

Fed. R. Civ. P. 23(e)(1) ................................................................................................................11

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................................11, 27

Fed. R. Civ. P. 23(e)(1)(B)(i) ..................................................................................................... 12

Fed. R. Civ. P. 23(e)(2) ....................................................................................................... passim

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................................... 14

## **INTRODUCTION**

This litigation arises from allegations that Defendants, New-Indy Catawba, LLC ("New Indy Catawba"), and New-Indy Containerboard, LLC ("New Indy Containerboard") (collectively, "NI" or "Defendants"), engaged in wrongful and negligent conduct in their operation of the New-Indy Catawba pulp and paper mill (the "Mill"), causing emissions of hydrogen sulfide ("H$_2$S"), methyl mercaptan, dimethyl disulfide, dimethyl sulfide (collectively, "total reduced sulfur" or "TRS") and other noxious chemical contaminants to be released from its wastewater treatment facility into the air, resulting in damages. Defendants denied and contested these allegations.

Following contentious litigation over a period of more than three years, including extensive motions practice, 52 depositions, and more than one million pages of document discovery, the parties have reached a proposed class settlement, as set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement" or "Settlement") attached as Exhibit A. This proposed class settlement provides for the payment of $18 million in satisfaction of claims for damages for a defined class of residents near the Mill, as well as attorneys' fees and expenses. In addition, and as discussed below, Defendants have agreed to undertake remedial activities valued at $85,000,000.00 to resolve the CWA/RCRA Action, the PSD Action, and the Intervention Action which have been brought before this Honorable Court.[1]

---

[1] As used herein, CWA/RCRA Action refers to the lawsuit pending as Civil Action No. 0:23-cv-00602-SAL before this Honorable Court. Likewise, the Intervention Action means the lawsuit filed and docketed as Civil Action No. 22-cv-02053-SAL (D.S.C.) and currently on appeal to the United States Court of Appeals for the Fourth Circuit as Appeal No. 23-1052. Furthermore, PSD Action refers to the lawsuit filed and docketed as Civil Action No. 0:22-cv-02366-SAL (D.S.C.), also currently on appeal to the United States Court of Appeals for the Fourth Circuit as Appeal No. 23-1988. The Settlement Agreements for the CWA/RCRA Action, PSD Action, and Intervention Action have been provided to those litigants and are in the process of being executed. The undersigned will update the Court when all have been signed.

Plaintiffs seek preliminary approval of the Class Action Settlement Agreement between Class Plaintiffs ("Plaintiffs") and Defendants.  Plaintiffs and proposed Class Counsel believe the Settlement to be fair, reasonable, and adequate.  In determining whether Preliminary Approval is warranted, the critical issue is whether the Court will likely be able to approve the Settlement under Fed. R. Civ. P. 23(e)(2) and certify the Class for purposes of settlement.[2] Plaintiffs and proposed Class Counsel submit that the Settlement satisfies each of the elements of Rule 23(e)(2), as well as the factors set forth by the Fourth Circuit in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991). Further, certifying the Settlement Class proposed here would be consistent with established precedent on Rule 23's requirements for certifying a class.

Accordingly, Plaintiffs now move this Court for an Order: (1) preliminarily approving the proposed Settlement; (2) preliminarily certifying, for settlement purposes only, the Settlement Class; (3) approving the form of Notice; (4) approving and directing implementation of the Notice Plan; (5) appointing Class Counsel; (6) appointing Class Representatives; (7) appointing the Notice Administrator; (8) appointing the Claims Administrator; (9) appointing the Special Master; (10) establishing a Qualified Settlement Fund; (11) scheduling the Final Fairness Hearing; and (12) setting a Bar Date after which class members will be prohibited from asserting a claim for a portion of the settlement fund.[3]

---

[2] Fed. R. Civ. P. 23(e).

[3] Defendants consent to certification of this class (and therefore do not oppose this motion or the relief sought herein) for settlement purposes only.  Defendants reserve all rights – including the right to contest certification for the reasons identified in Defendants opposition to class certification and at the class certification hearing that took place April 11-12, 2024 – if final approval is not granted.  *See* Settlement Agreement, Exhibit A, at Paragraph 4.

## MATERIAL TERMS OF THE PROPOSED CLASS SETTLEMENT

### A. Consideration

The proposed Settlement Agreement requires Defendants to pay $18 million ("Settlement Funds") in full satisfaction of Plaintiffs' and Class Members' claims for damages arising from acts of the Defendants or harm incurred during the Class Period, defined as January 31, 2021 to the effective date of the settlement, including attorneys' fees, costs, and expenses.

The Settlement Funds are required to be paid in three installments, such that 28.75% shall be paid within five (5) days of Preliminary Approval; 28.57% shall be paid on the one-year anniversary of Preliminary Approval; and 42.86% shall be paid on the two-year anniversary of Preliminary Approval. Pursuant to the Settlement Agreement, no Settlement Funds will be disbursed or distributed until and unless final approval is granted and the times for all appeals have expired.

Defendants shall not be entitled to a return of any portion of the settlement amount if the proposed Settlement Agreement is finally approved. If the Settlement Agreement is not finally approved, all payments are to be returned to Defendants.

A Qualified Settlement Fund (the "QSF") will be established to receive the settlement proceeds. Following the approval of this Court, funds in the QSF will be allocated and amounts will be distributed to class members in accordance with the Allocation Methodology described below and further detailed in **Exhibit B**. Legal fees, costs, and expenses will likewise be subject to the approval of this Court prior to payment from the QSF.

### B. Proposed Settlement Class Definition

The Parties propose the following Settlement Class:

All Persons who meet any of the following criteria:

3

(a) during the period from January 31, 2021, until September 11, 2021, owned a single-family home located in whole or part within the Class Settlement Impact Area[4]; or

(b) spouses or children of those who, during the period from January 31, 2021, until September 11, 2021, owned a single-family home located in whole or in part within the Class Settlement Impact Area, and resided at that home for at least 30 days between January 31, 2021, until September 11, 2021; or

(c) retained the representation of any one of Plaintiffs' Counsel in connection with alleged emissions from the Mill on or before April 25, 2024, as set forth on the list attached as Exhibit B to the Class Action Settlement Agreement.

Excluded from the definition of the class are:  (1) Defendants; (2) any entity in which Defendants have a controlling interest; (3) any Person with an ownership interest in Defendants; (4) any current or former officer or director of Defendants; (5) any current or former employee of any Defendant for any potential exposure during their employment by such Defendant; (6) Persons who have entered into separate settlement agreements with any Defendant related to claims similar to those claims made in the Action; and (7) the legal representatives, successors, or assigns of Defendants.

This class definition is ascertainable for purposes of this Settlement Agreement.

## C. Allocation of Settlement Proceeds

Pursuant to the Class Action Settlement Agreement, proceeds of this settlement will be allocated by a Court-Appointed Special Master, in accordance with the Allocation Methodology,[5] which considers the relative damages incurred by each Class Member.  As described in greater detail below, the Plaintiffs seek the appointment of the Hon. Marina Corodemus (Ret.) to serve as Special Master and administer the Allocation Methodology.

---

[4] The Class Settlement Impact Area is defined by a ESRI Shapefile represented by the blue line depicted on Exhibit A to the Class Action Settlement Agreement.
[5] Exhibit B.

### D. Court Appointments

The Settlement Agreement contemplates the Court's appointment of independent, neutral third parties to administer the Settlement: (1) a Notice Administrator; (2) a Claims Administrator; and (3) a Special Master. All fees, costs, and expenses incurred in the administration and/or work by the Notice Administrator, the Claims Administrator, and the Special Master shall be paid from the Settlement Funds, upon approval by the Special Master. This motion requests their appointment.

#### 1. Notice Administrator

The Plaintiffs seek the appointment of RG/2 Claims Administration LLC ("RG/2 Claims") to serve as Notice Administrator to provide notice to the Class, as required by Federal Rule 23(c)(2), and to assist the Special Master as Claims Administrator. RG/2 Claims is a boutique class action claims administration firm with a nationwide presence founded by seasoned class action practitioners and highly credentialed tax professionals. RG/2 has extensive experience in designing and implementing class notice programs, as described in the proposed Notice Plan, attached as Exhibit C. The Notice Plan prepared by RG/2 is designed to provide notice of this settlement pursuant to the requirements of Rule 23(c)(2), in a manner consistent with the Federal Judicial Center's (FJC) Judges' Class Action Notice and Claims Process Checklist and Plain Language guide.[6]

#### 2. Claims Administrator.

The Plaintiffs additionally seek the appointment of RG/2 Claims Administration, LLC to serve as Claims Administrator. RG/2 Claims has extensive experience providing claims administrative services, having administered in excess of $2.1 billion in class action settlement

---

[6] Notice Plan, attached as Exhibit C.

proceeds since 2021.[7] RG/2 will assist the Special Master in the collection of Registration Forms, obtaining any additional information necessary to support the Special Master's determinations, and communicating with Class Members regarding the allocation process and determinations.

       3.  *Special Master and Claims Adjudicator*

       Plaintiffs propose the appointment of a special master to serve in the capacity as Claims Adjudicator as contemplated under the Settlement Agreement to govern allocation of the proceeds of this settlement. Specifically, Plaintiffs propose the Hon. Marina Corodemus (Ret.) to serve as Claims Adjudicator and Special Master.

       Judge Corodemus is a highly experienced professional in Alternative Dispute Resolution (ADR) and a sought after special master by Federal and State Courts involving class actions, mass torts, environmental contamination, natural resource damages, products liability, consumer fraud, and serious aggregate litigation.[8] She brings over ten years experience on the bench as New Jersey's sole Mass Tort Judge. Judge Corodemus has experience serving as a Special Master responsible for allocating damages in environmental tort matters, including in the matter of *Zimmerman v. 3M Co. et al.*, 1:17-cv-01062, in the U.S. District Court for the Western District of Michigan, wherein Judge Corodemus was responsible for allocating a $54 million settlement fund for damages arising from PFAS exposure. Judge Corodemus also served as Special Master for dePuy Orthopaedics, Inc., *ASR Hip Implant Products* and oversaw the appeals and fee disputes associated with the $2.7 billion settlement. She also served as Special Master for *American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation* and *Vioxx: Products Liability Litigation*.

---

[7] *Id.*
[8] Curriculum Vitae of Hon Marina Corodemus (Ret.), attached as Exhibit D.

The Special Master will evaluate each claim and categorize each claimant to determine fair, reasonable, and equitable compensation based upon the established categories of damages and the proposed Allocation Methodology, attached as Exhibit B. Following notification to each claimant of their allocation, a period will be provided during which each claimant may appeal to a Claims Adjudicator before the allocation becomes final.[9]

### E. Notice to Class Members

If the Court preliminarily approves the terms of this settlement, including the Settlement Class, notice to potential class members is required under Rule 23(c)(2) and Rule 23(e). Plaintiffs' Counsel has worked with RG/2 Claims Administration LLC to develop a Notice program that meets Rule 23's requirements and due process.[10] If approved, the Notice of proposed settlement and Fairness Hearing would be provided by mail to all residences within the class, as well as through publication in selected South Carolina newspapers and online at a website set up for this purpose.[11]

The Notice Plan consists of mailing a Long Form Notice[12] to all identified Class Member addresses and to available email addresses, as well as a Short Form Publication Notice[13] in the Charlotte Observer, The Herald (Rock Hill), and The State (Columbia). Additionally, RG/2 will establish a settlement website for the purpose of disseminating the Notice and related content.[14]

The Notice includes all information necessary for Class Members to make informed decisions about making a claim. The Notice will inform Class Members that the judgment will

---

[9] Allocation Methodology, attached as Exhibit B.
[10] Notice Plan, attached as Exhibit C.
[11] *Id.*
[12] Proposed Long Form Notice, Exhibit C, Attachment 1.
[13] Short Form Publication Notice, Exhibit C, Attachment 1.
[14] Notice Plan, attached as Exhibit C.

include all members who do not request exclusion from the judgment, and will further inform Class Members of their rights to (1) object to the terms of the proposed Settlement Agreement by filing written notice of any objections within a prescribed period of time; (2) be heard on any possible objections at the Fairness Hearing to be conducted at a prescribed time and place and in a prescribed manner; (3) exclude themselves from the proposed Settlement Agreement; and (4) file a claim for a portion of the Settlement Fund.[15] The notice will additionally advise that the judgment will include all Class Members who do not request exclusion.[16] Further, the notice will inform Class Members of a court-approved Bar Date, after which Class Members will be prohibited from asserting a claim for a portion of the settlement fund.[17] A cost estimate of the proposed Notice Plan is provided as Attachment 5 to Exhibit C.

### F. Allocation Methodology

The Class Settlement provides that a Class Member will neither be allocated nor receive their share of the Settlement Funds unless they timely submit a complete Registration Form.[18] Settlement Funds will then be divided among qualifying, registered Class Members as determined by a Claims Adjudicator.[19] As set forth above, Plaintiffs propose the appointment Judge Marina Corodemus (Ret.) to serve as Claims Adjudicator and Special Master. Judge Corodemus has developed an Allocation Methodology, attached as Exhibit B, which is provided for approval by this Court.

The Allocation Methodology provides for an initial calculation of damages, as determined by the following tiers, utilizing distance from the Facility as a proxy for exposure. Nuisance

---

[15] Notice Plan, Exhibit C.
[16] *Id*.
[17] *Id*.
[18] Proposed Registration Form, Exhibit C, Attachment 2.
[19] Class Settlement Agreement, Exhibit A.

damages shall be payable to property owners, and negligence damages payable to property owners, their spouses and children:

> **<u>Tier 1-Nuisance</u>**: Claimants/Properties within six (6) miles of the Facility as of January 31, 2021. Sixty percent of the net settlement fund will be allocated for registered claims among the estimated 1,903 properties in Tier 1.

> **<u>Tier 2-Nuisance</u>**: Claimants/Properties within six (6) to ten (10) miles of the Facility as of January 31, 2021. Eight percent of the net settlement fund will be allocated for registered claims among the estimated 378 properties in Tier 2.

> **<u>Tier 3-Nuisance</u>**: Claimants/Properties within ten (10) to twenty (20) miles of the Facility as of January 31, 2021. Four percent of the net settlement fund will be allocated for registered claims among the estimated 147 properties in Tier 3.

> **<u>Tier 4-Negligence</u>**: Claimants who resided within six (6) miles of the Facility as of January 31, 2021, and who sustained transient personal injury health effects related to the emissions from the Facility at any time from January 31, 2021, to the present. Twenty percent of the net settlement funds will be allocated for registered claims among the estimated 4,840 Claimants in Tier 4.

> **<u>Tier 5-Negligence</u>**: Claimants who resided within six (6) to twenty (20) miles of the Facility as of January 31, 2021, and who sustained transient personal injury health effects related to the emissions from the Facility at any time from January 31, 2021, to the present. Eight percent of the net settlement funds will be allocated for registered claims the estimated 1,235 Claimants in Tier 5.

To the extent that registered claimants are dissatisfied with their initial award, the Allocation Methodology provides for a reconsideration by the Special Master, consistent with relevant and applicable legal criteria for liability and damages.

Additionally, through this litigation a variety of individuals have served as named Class Representatives, and have undertaken a number of activities beneficial to the litigation, including, but to not limited to, answering written discovery and sitting for depositions. Plaintiffs therefore intend to seek leave of Court to provide those named Class Representatives with a nominal award for their service in the Action. Defendants take no position on whether such awards should be granted or on the amounts of any such award, and the Parties have made no agreement on this point.

### G. Payment of Attorneys' Fees

Plaintiffs' Counsel will file a Petition for legal fees and reimbursement of costs and expenses prior to the date of the Fairness Hearing. In this litigation, Plaintiffs' Counsel intends to request a legal fee of no more than 25% and reimbursement of costs and expenses of up to $4.5 million, from the $18 million settlement fund. Particularly as allocation determinations are not likely to be reached until the Spring of 2025, Plaintiffs' Counsel intends to request full reimbursement of advanced costs from the first installment, following final approval of the class settlement and this Court's Order on attorneys' fees and reimbursement of expenses.

### H. Other Settlement Agreements with New Indy

Contemporaneously with the settlement of this class action case, separate resolutions have been reached in three other cases involving New-Indy Catawba and/or New-Indy Containerboard. These include:

- *Butler et al. v. New-Indy Catawba, LLC et al.*, Civil Action No. 0:22-cv-02366-SAL, which alleged that the New-Indy defendants failed to obtain a necessary Prevention of Significant Deterioration ("PSD") permit when the Catawba Mill was converted from making bleach paper to making kraft paper.
- *Chin et al. v. New-Indy Catawba, LLC et al.,* Civil Action No. 0:23-cv-00602-SAL, brought under the Clean Water Act and the Resource Conservation and Recovery Act, against both of the New-Indy defendants, and alleges that pollutants, including dioxins and cobalt, have migrated or seeped from the unlined wastewater sludge lagoons into groundwater beneath the Mill and subsequently have been discharged into the Catawba River.
- A Motion to Intervene in *United States of America v. New Indy Catawba, LLC*, Civil Action No. 0:21-cv-02053 SAL seeking to intervene in the lawsuit filed by the USEPA against New Indy under the Federal Clean Air Act ("CAA").

Resolution of these three matters involve agreements on the part of New-Indy Catawba to engage in certain activities designed to reduce additional emissions of $H_2S$ and TRS, as well as efforts to prevent migration of dioxin and cobalt into the Catawba River. These activities include: (1) the installation of a new steam stripper, which will remove 98% of TRS from foul condensate; (2) restoring and modifying their existing steam stripper as backup capacity; (3) retrofitting the

New-Indy Catawba recovery boiler to incinerate the condensed methanol, which will remove more than 98% of TRS from the wastewater treatment system; (4) improving the structural integrity of three lagoons; and (5) capping two lagoons. The Parties estimate that the aggregate value of these separate commitments is expected to be at least $85 million for incurred and contracted costs, exclusive of long-term operation and maintenance and contingencies. Further information about these resolutions is set forth below. These remedies are not included as part of the Settlement Agreement in this matter, and Plaintiffs' Counsel will not be requesting a legal fee, costs, and expenses in connection with this resolution of these matters, as the legal fees, costs, and/or expenses related to these matters have been separately negotiated between the parties, and will be paid in addition to any fee awarded by the Court in connection with this Class Settlement.

## **ARGUMENT**

Federal Rule of Civil Procedure 23(e) provides that "the claims, issues, or defenses of a ... class proposed to be certified for purposes of settlement —may be settled, voluntarily dismissed, or compromised only with the court's approval court approval."[20]

Rule 23(e) provides a two-step process for approval of a class settlement.[21]  First, the Parties must first provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

(i) approve the proposal under Rule 23(e)(2); and

---

[20] Fed. R. Civ. P. 23(e).
[21] Fed. R. Civ. P. 23(e)(1).

(ii) certify the class for purposes of judgment on the proposal."[22]

Following notice to the class, Rule 23(e)(2) requires the Court to hold a final fairness hearing to reach a final determination as to whether the settlement is fair, reasonable and adequate, thereby approving the class settlement.[23]

Notice should be authorized, and preliminary approval should be granted, where the proposed settlement is "within the range of possible approval" or, in other words, whether there is "probable cause" to notify the class of the proposed settlement.[24]   For preliminary approval purposes, a court "is not required to undertake an in-depth consideration of the relevant factors for final approval."[25]

In determining whether to approve a settlement, the Court should be guided by the principle that "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context."[26] Indeed, "[t]he voluntary resolution of litigation through settlement is strongly favored by the courts and is 'particularly appropriate' in class actions."[27]

**A. This Proposed Settlement Should be Preliminarily Approved under Rule 23(e)(2).**

The Class Settlement should be preliminarily approved, and notice should be authorized under Rule 23(e)(1). [28]

---

[22] Fed. R. Civ. P. 23(e)(1)(B); *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2021 WL 248471, at *1 (D.S.C. Jan. 25, 2021).
[23] Fed. R. Civ. P. 23(e)(2).
[24] *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 827 (E.D.N.C. 1994) (internal citations omitted).
[25] *In re LandAmerica § 1031 Exch. Servs. Inc. IRS § 1031 Tax Deferred Exch. Litig.*, 2012 U.S. Dist. LEXIS 97933, at *5,6 (quoting *Horton* , 855 F. Supp. at 827 ).
[26] *Reed v. Big Water Resort, LLC*, 2016 U.S. Dist. LEXIS 187745, at *14 (D.S.C. May 26, 2016) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2nd Cir. 1998));" *see also Crandell v. U.S.*, 703 F.2d 74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes.").
[27] *In re LandAmerica,*, 2012 U.S. Dist. LEXIS 97933 at *13-14.
[28] Fed. R. Civ. P. 23(e)(1)(B)(i).

Rule 23(e)(2) authorizes final approval of a settlement where that settlement is fair, reasonable, and adequate.[29] In addition to the criteria specifically enumerated under Rule 23(e)(2), the Fourth Circuit, in *Jiffy Lube* "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)."[30]

Here, Plaintiffs and proposed Class Counsel submit that both the form and substance of the proposed Settlement are fair, reasonable, and adequate, and thus preliminary approval by the Court is warranted. Indeed, the proposed Settlement satisfies each of the elements for assessing the reasonableness of the settlement under Rule 23(e)(2), as well as the factors set forth in *Jiffy Lube*.[31]

### 1. The Settlement is Fair

The Fourth Circuit uses the following *Jiffy Lube* factors to analyze the fairness of a proposed class settlement to ensure it was reached as a result of good-faith bargaining at arm's length, without collusion: (1) the posture of the case at the time the proposed settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) counsel's experience in the type of case at issue.[32]

### a. The Advanced Posture of the Case Supports the Fairness of this Settlement.

Here, "the cause [was] ready for trial," which ordinarily assures "sufficient development of the facts to permit a reasonable judgment on the possible merits of the case."[33] At the time of

---

[29] Fed. R. Civ. P. 23(e)(2).

[30] *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2024 WL 1341122, at *9 (D.S.C. Mar. 29, 2024) (citing *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)).

[31] 927 F.2d at 158-59; *see also In re: Lumber Liquidators*, 952 F.3d at 484 n.8 (reaffirming the *Jiffy Lube* factors while noting that the elements listed in the 2018 amendment to Rule 23(e)(2) differ from the Court's considerations but "almost completely overlap").

[32] *In re: Lumber Liquidators*, 952 F.3d at 484 n.8; *see also Comm'ri of Public Works of City of Charleston v. Costco Wholesale Corp.*, 340 F.R.D. 242, 249 (D.S.C. 2021).

[33] *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).

settlement, discovery had closed, and the Parties had litigated Motions to Dismiss, as well as completed briefing and participated in hearings on Motions for Summary Judgment, motions to exclude expert witnesses pursuant to *Daubert* and Federal Rule of Evidence 702, and Plaintiffs' Motion for Class Certification.

Further, the Settlement was reached less than two months before the start of jury selection, at a point where the Parties were in the best posture prior to trial to evaluate the strengths, weaknesses, and litigation risks of proceeding to trial, and negotiate a fair and reasonable resolution. Thus, the first *Jiffy Lube* factor for evaluating fairness supports preliminary approval of the proposed Settlement.

> b. *Discovery was closed, permitting the Parties a full assessment of the strengths and weakness of the claims and defenses.*

At the time of settlement, discovery had closed, and the parties were prepared to proceed to trial. The Parties conducted extensive discovery, including 52 fact and expert depositions, a site inspection of the Mill, site inspections of the homes of class representatives, and the production and review of over 1,000,000 documents. As above, the Parties were fully informed about the nature of the claims and defenses that would be advanced at trial, and through continued motions practice, permitting the Parties to reach a fair, negotiated resolution.

> c. *The Proposed Settlement Was Negotiated at Arm's-Length.*

Settlement negotiations in this matter took place over multiple sessions and multiple days, facilitated initially by a private mediator retained by the parties, Eric Green, with final resolution occurring through two one-day mediation session with U.S. Magistrate Judge Shiva Hodges. This judicially overseen mediation session involved substantive and adversarial discussions on the merits of the case and resulted in an arms-length negotiated resolution. The adversarial nature of the negotiations and the aid provided by Judge Hodges are factors that weigh in favor of

preliminary approval and demonstrate that the Fourth Circuit's third factor for evaluating fairness supports preliminary approval of the proposed Settlement.[34]

### d. Class Counsel and Counsel for the Defendants Have Decades of Experience Litigating Complex Cases, Including Environmental and Class Actions.

Both the Plaintiffs and the Defendants were represented by law firms and attorneys with significant experience litigating environmental and toxic tort matters. By order of December 8, 2021, the Court appointed T. David Hoyle, Richard A. Harpootlian, Chase T. Brockstedt, and Philip C. Federico as Interim Co-Lead Counsel pursuant to Rule 23(g). Since that time, the Court, through numerous hearings, has become familiar with these lawyers and their firms. As set forth in Exhibits E-H, Messrs. Hoyle, Harpootlian, Brockstedt, and Federico have detailed their professional experience, involvement in this litigation, and opinions in support of preliminary approval. Because Plaintiffs and the Defendants are represented by competent counsel who are experienced in complex, large-scale environmental litigation, their opinions supporting the proposed Settlement weigh in favor of granting preliminary approval.[35] Indeed, Courts have recognized that class counsel's experience in similar litigation allows for a realistic assessment of the merits of a claim and the desirability of a settlement.[36] This court has previously given consideration to the "Parties' history of litigating similar, if not identical issues, combined with

---

[34] *Id.*; *see also S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 345-46 (D.S.C. 1991) (although supervision "is not mandatory in order to determine a settlement is fair, such participation can insure that the parties will negotiate in good faith without collusion."); *see also Robinson v. Carolina First Bank NA*, 2019 U.S. Dist. LEXIS 26450, at *27 (D.S.C. Feb. 14, 2019) ("supervision by a mediator lends an air of fairness to agreements that are ultimately reached"); Fed. R. Civ. P. 23(e)(2)(B).

[35] *Robinson,* 2019 U.S. Dist. LEXIS 26450, at *13-14, *18-19; *Flinn*, 528 F.2d at 1173 (the opinion and recommendation of experienced counsel "should be given weight in evaluating the proposed settlement."); Fed. R. Civ. P. 23(e)(2)(A).

[36] *Bass v. 817 Corp.,* 2017 U.S. Dist. LEXIS 225380, *5-6 (D.S.C. Sept. 19, 2017).

Plaintiff's counsel's extensive experience of the same" as "indicat[ing] the settlement was negotiated at arm's length."[37]

### 2. The Settlement Provides Adequate Compensation to the Class.

Defendants will pay $18 million into a Court-approved QSF to be distributed to Class Members.[38] Following appropriate deductions for fees and costs as set forth in the Settlement Agreement, those funds will be allocated equitably among Eligible Class Members under the Plan of Allocation.[39]

At this stage, the Court need only find that the Settlement is within "the range of possible approval,"[40] considering "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants […] and (5) the degree of opposition to the settlement."[41] All such factors weigh in favor of preliminary approval**.**

### a. The Settlement is reasonable considering the relative strength and weakness of the claims and defenses.

Although Plaintiffs are confident in the strength of their allegations and supporting evidence, "Plaintiffs' ability to prevail on the merits is uncertain. The Settlement confers relief that might well not be achievable through continued litigation."[42] When reviewing the adequacy of a proposed settlement, "the court can assess the relative strengths and weaknesses of the settling

---

[37] *Comm'r,* 340 F.R.D. at 249.
[38] *See* Class Action Settlement Agreement at Exhibit A.
[39] Allocation Methodology, attached as Exhibit B.
[40] *Comm'r*, 340 F.R.D. at 249.
[41] *Jiffy Lube*, 927 F.2d at 159; *Comm'r*, 340 F.R.D. at 250; *see also* Fed. R. Civ. P.  23(e)(2)(C)-(D).
[42] *Gray v. Talking Phone Book*, 2012 U.S. Dist. LEXIS 200804, at *16 (D.S.C. Aug. 10, 2012).

parties' positions to evaluate the various risks and costs that accompany continuation of the litigation."[43]  As in many cases, uncertainty favors settlement because "hurdles to proving liability, such as proving proximate cause would remain and would necessitate expensive expert testimony."[44]

Having presided over the Parties' briefing and argument on dispositive motions, this Court is familiar with the litigation risks associated with continued litigation.  These include pending motions to exclude certain expert witnesses, dispositive motions on the admissibility of health impacts and the liability of New-Indy Containerboard, as well as the risks attendant to resolution of contested factual issues before a jury. While the specific amounts awarded to class members will depend on the number of registered claims, even with 100% participation, this settlement will provide meaningful recoveries for damages attributable to nuisance and negligence for the owners of the estimated 2,428 properties, and the members of their households.

> b. *The Settlement is Reasonable Given the Anticipated Duration and Expense of Additional Litigation.*

This settlement provides for the resolution of potentially thousands of claims in a highly complex environmental tort matter.  Prior to this Settlement, Plaintiffs moved for class certification for the purpose of providing efficiencies to the litigation of these individuals' claims, which was pending at the time of Settlement.  However, even were class certification granted as requested, there would remain individualized issues which would require additional litigation over a period of years.  Were class certification denied, individualized litigation of these thousands of claims

---

[43] *Case v. French Quarter III LLC*, 2015 WL 12851717, at *8 (D.S.C. July 27, 2015).
[44] *Comm'r*, 340 F.R.D. at 250 (internal quotation marks omitted); *LandAmerica*, 2012 U.S. Dist. LEXIS 97933, at *11-12 (where defendants "vigorously dispute the Plaintiffs' claims on numerous grounds," "their dispute underscores . . . the uncertainty of the outcome[.]"); *S.C. Nat. Bank*, 139 F.R.D. at 340 (settlement favored by risk to both sides of ultimate resolution of the numerous and significant factual and legal issues).

would require thousands of multiday, complex trials to establish liability and damages, at extraordinary expense to the parties. Moreover, any judgments won following trial would likely be subject to lengthy appeals, whereas the Settlement provides more immediate results and benefits to Class Members.[45]  Resolution of this matter through this Settlement resolves this matter for Class Members now, rather than years or even a decade or more into the future, as would be required if class certification were denied.

### c. Solvency of the Defendants

Plaintiffs alleged that both Defendant New-Indy Catawba, as well as its parent, New-Indy Containerboard, were liable for damages to residents around the Mill.[46]  Defendants filed a Motion for Summary Judgment as to the liability of New-Indy Containerboard, asserting that there was no evidence of any tortious act undertaken by New-Indy Containerboard, and that New-Indy Containerboard was not otherwise liable for any harm.[47]  This Motion for Summary Judgment was pending at the time of Settlement.  While Plaintiffs are confident that the evidence and argument demonstrated the liability of New-Indy Containerboard, as with any contested motion, there was a litigation risk that the Plaintiffs would be unable to establish liability on the part of New-Indy Containerboard, either at summary judgment, or before a jury.  Under that circumstance, the Plaintiffs would be left to recover against New-Indy Catawba alone, which Plaintiffs asserted was insolvent, with liabilities well in excess of their assets.[48]  This factor too weighs in favor of the adequacy of this Settlement. Accordingly, Plaintiffs submit the proposed settlement is adequate, given the potential that Defendant New-Indy Containerboard may have been able to obtain

---

[45] *See Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) ("Accordingly, even after three and a half years of litigation, the road to recovery—particularly for the class as a whole—likely would be protracted and costly if the settlement were not approved.").
[46] ECF 6.
[47] ECF No. 227.
[48] See, ECF 253.  Defendants disputed these allegations.

summary judgment, and given the potential that New-Indy Catawba, as alleged by Plaintiffs, may have been unable on its own to satisfy a judgment in Plaintiffs' favor.

**B. The Proposed Settlement Class Should Be Provisionally Certified Under Federal Rule of Civil Procedure 23.**

*1. The Requirements of Rule 23(a) are satisfied.*

A proposed settlement class satisfies the requirements for class certification under Rule 23(a), if it meets the following requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[49] The Fourth Circuit also recognizes that "Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable" or ascertainable.[50]

At this preliminary stage, this Court is not required to undertake an in-depth consideration of the relevant factors; nor should the Court decide the merits of the case or resolve unsettled legal questions, but rather it should "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision."[51]

*a. Ascertainability*

In analyzing any class action, the Fourth Circuit has imposed a non-textual condition that "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria."[52] This requirement is often called "ascertainability," where "[t]he goal is not to identify every class member at the time of certification, but to define a class in such a way as to ensure that there will be some administratively feasible [way] for the court to determine whether

---

[49] Fed. R. Civ. P. 23(a).
[50] *Peters v. Aetna Inc*., 2 F.4th 199, 241-42 (4th Cir. 2021) (internal citations omitted); *see also Comm'r*, 340 F.R.D. at 247.
[51] *Flinn*, 528 F.2d at 1173.
[52] *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 654-55 (4th Cir. 2019).

a particular individual is a member at some point."[53] This requirement will be met so long as the putative class is able to be "identified on a large-scale basis, and notified of the class action accordingly."[54]

As detailed above, the proposed Settlement Class meets this requirement because the putative Class Members it includes are objectively described, readily identifiable, and ascertainable by reference to publicly available information. Individuals can meet the objective criteria of the class definition either based on upon retention of class counsel, each of whom are identified in Exhibit B to the Class Settlement Agreement; by property ownership within a defined geographic area, circumscribed by an ESRI Shapefile; or by legally recognized family relationship with such a property owner and residency during a defined period. The Claims Administrator may rely upon both publicly available data, as well as any supporting materials provided by Class Members, to objectively evaluate whether Class Members meet these criteria.[55] For this reason, the Fourth Circuit's ascertainablity requirement is satisfied.

**1. Rule 23(a)'s Numerosity Requirement is Satisfied.**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."[56] The Fourth Circuit has found numerosity satisfied where the proposed class

---

[53] *Id.* at 658 (internal quotation marks omitted).

[54] *Id.*

[55] *See, e.g. Beaulieu v. EQ Indus. Servs., Inc*., 2009 WL 2208131, at *8 (E.D.N.C. July 22, 2009) ("Residence in the [class area] should be readily determinable from public records" and may be proven using "leases, utility bills."); *see also Horn v. Gov't Emps. Ins. Co*., 86 Fed. Appx. 405, 408 (10th Cir. 2004) (recognizing outside the context of class certification "standard documentary proof of residence, such as drivers' license, credit card mailings, tax returns, voting registration, or the like.").

[56] Fed. R. Civ. P. 23(a)(1).

included only thirty members.[57] This Class includes an estimated 6,000 individuals.[58] The large number of individuals in the proposed Class make joinder an unrealistic option in this case, thereby confirming the impracticality of resolving their claims without use of the class action device.[59] Thus, the proposed Settlement Class easily satisfies Rule 23(a)'s numerosity requirement.

### 2. Rule 23(a)'s Commonality Requirement is Satisfied.

Under Rule 23(a)(2), a district court may certify a class only when "there are questions of law or fact common to the class."[60] The key inquiry for evaluating commonality is whether a common question can be answered in a class-wide proceeding such that it will "drive the resolution of the litigation."[61] Thus, even a single common question is sufficient to meet this Rule 23(a) requirement.[62]

This litigation involves numerous common issues, particularly as it concerns the alleged wrongful conduct of the Defendants. Common issues have similarly been identified in other environmental tort matters. For example, in *Hart v. J.H. Baxter & Co., Inc.*, homeowners residing

---

[57] *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005).

[58] Declaration of Keir Soderberg, PhD., attached as Exhibit I, providing estimated total population based on census data.

[59] *See In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234-36 (4th Cir. 2021) (holding that when the proposed class is in the "gray area" between 20 to 40 members, "the district court should consider whether judicial economy favors *either* a class action or joinder."); *see also* Preliminary Approval Orders issued by this Court in the 3M PWS Settlement (ECF 3626) and in the DuPont PWS Settlement (ECF 3603).

[60] Fed. R. Civ. P. 23(a)(2).

[61] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.").. *See also Comm'ri*, 340 F.R.D. at 247-248 ("The commonality requirement—at least as it relates to a settlement class—is 'not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases.'").

[62] *Dukes*, 564 U.S. at 359.

near a wood preserving facility alleged that various chemical byproducts from the facility invaded their groundwater, soil, properties, and persons and brought suit for trespass, private nuisance, public nuisance, negligence, and gross negligence.[63]    The Oregon district court found there was commonality because there were "many class-wide legal determinations that will require common evidence and involve common legal issues."[64]    In *Rowe v. E.I. du Pont de Nemours & Co,* the court found the commonality requirement was satisfied because there were "issues relevant to Plaintiffs' common law claims that are common to all Class Members, such as whether DuPont released PFOA from its Chambers Works Plant in New Jersey into the surrounding air and water."[65]    Similarly, in *Sullivan v. Saint-Gobain Performance Plastics Corp.*, the court found commonality where "common *answers* to questions of liability" entailed "complex issues of chemistry, air modeling, and hydrogeology, [because] the answers are common to all property owners and residents within the contamination zone."[66]

Just as in *Hart*, *Rowe*, and *Sullivan*, this action raises numerous common questions of both law and fact that will resolve important issues for the Plaintiffs and all proposed Class Members. For this reason, Rule 23(a)'s commonality requirement is satisfied here.

### 3. Rule 23(a)'s Typicality Requirement is Satisfied.

Typicality requires that the proposed class representatives' claims be "typical of the claims or defenses of the class."[67] Typicality is satisfied if a proposed class representative's claim is not "so different from the claims of absent class members that their claims will not be advanced by

---

[63] No. 6:21-cv-00663-MK, 2023 WL 2918632, at *1 (D. Or. Mar. 14, 2023).
[64] *Id.* at *3.
[65] 262 F.R.D. 451, 456 (D.N.J. 2009).
[66] 2019 WL 8272995, at *5 (D. Vt. Aug. 23, 2019) (emphasis in original).
[67] Fed. R. Civ. P. 23(a)(3).

plaintiff's proof of his own individual claim."[68] Still, courts have emphasized that this "is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned."[69] Rather, typicality is satisfied where there is "a sufficient link" between a representative plaintiff's claims and those of absent class members where both allegedly suffered damages caused by the same product, arising out of the same alleged course of conduct by defendant, and based on identical legal theories.[70]

Here, the named Plaintiffs' claims for damages are typical and wholly aligned with the claims of the proposed Class Members. Each seek recovery for damages which they alleged were caused by TRS emissions caused by the Defendants, including personal injury and nuisance damages, where applicable. This Settlement provides for determination of those damages by a Special Master, in accordance with the relative merit of these claims under South Carolina law.[71] Plaintiffs' claims for damages are typical of those of the Class for purposes of this settlement.

### 4. Rule 23(a)'s Adequacy of Representation Requirement is Satisfied.

Rule 23(a)(4) requires that the "representative Parties will fairly and adequately protect the interests of the class."[72] This finding "requires the Court to determine: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether

---

[68] *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006).
[69] *Id.* at 467.
[70] *Comm'ri,* 340 F.R.D. at 247-248.
[71] Allocation Methodology, attached as Exhibit B.
[72] Fed. R. Civ. P. 23(a)(4). *See also 1988 Trust for Allen Children Dated 8/8/88,* 28 F.4th 513, 524 (4th Cir. 2022).

the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the entire class."[73] This inquiry "tend[s] to merge" with the commonality and typicality criteria.[74]

The adequacy of representation requirement is satisfied here because Plaintiffs and proposed Class Counsel have no interests antagonistic to the interests of the Settlement Class, no indicia of conflicts of interest exists, and Plaintiffs allege the same or similar harms as the absent Class Members. Further, Plaintiffs and proposed Class Counsel have demonstrated a willingness and ability to vigorously prosecute the class claims as set forth in detail above.[75] Lastly, there is no basis for believing that proposed Class Counsel will not adequately represent the interests of absent Class Members given their extensive experience in class actions, robust prosecution of the class claims in this litigation, and the results obtained in this matter.[76]

For all these reasons, the proposed Settlement satisfies Rule 23(a)'s adequacy of representation requirement.

### 5. The Requirements of Rule 23(b)(3) are Satisfied.

In addition to the requirements of Rule 23(a), the proposed Settlement Class must also satisfy the requirements of Rule 23(b)(3). "An acceptable type of class provided for by Rule 23(b) is where the class is superior to other methods of adjudication because common questions of law

---

[73] *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800-JFA, 2015 U.S. Dist. LEXIS 1765, at *24 (D.S.C. Jan. 8, 2015) (citations omitted).
[74] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*
[75] *See id.*
[76] *See, e.g.*, *In re Aqueous,* 2021 U.S. Dist. LEXIS 16470, at *16 (finding Mr. Napoli would adequately represent the interests of absent members of a class comprised of residents of a community located in the vicinity of an AFFF manufacturing facility); *see also* Order and Opinion of this Court (ECF 4885), at 11 (noting that "[t]hroughout this litigation the Court has praised the quality of lawyering on both sides.").

or fact predominate over those of individual class members ('superiority requirement')."[77] In making this determination, a court must consider: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action."[78]

Because a chief justification for class actions is efficiency, courts "must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court."[79] "'Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.'"[80]

Here, for the same reasons discussed in the preceding section, common questions predominate over any individual questions that the Class Members may have, particularly in the context of this settlement.  Plaintiffs allege that they have been harmed by a common course of conduct by the Defendants, resulting in similar types of harm.  While certain individual issues may exist for some Class Members, the nature and scope of the common questions in this case satisfy Rule 23(b)(3)'s predominance requirement.

---

[77] *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470, at *5.
[78] Fed. R. Civ. P. 23(b)(3).
[79] *In re Aqueous*, 2021 U.S. Dist. LEXIS 16470 at *6 (citing 7AA Wright & Miller, Fed. Prac. and Proc. § 1779 (3d ed. 2005)).
[80] *Stillmock v. Weis Mkts., Inc.,* 385 F. App'x. 267, 273 (4th Cir. 2010) (quoting *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)).

In addition, the other factors the Fourth Circuit recognizes that favor class treatment over individual cases, weigh in favor of certification, including (1) the absence of a strong interest for class members to pursue individual litigation, particularly when considering the expense, burden, risk, and length of trial and appellate proceedings involved; (2) the extent of litigation completed in connection with this matter by the Class Representatives; (3) the desirability to concentrate the litigation in the forum given its familiarity with the relevant issues; and (4) the degree of manageability of this litigation afforded by this Settlement, which is clearly preferable to continued and individualized litigation.[81]

Thus, the proposed Settlement satisfies all the criteria necessary for class certification under Rules 23(a) and (b)(3). Having met these criteria, the proposed Settlement Class should be preliminarily certified, and Notice of the Settlement should be issued.

**C.  Upon Certifying the Settlement Class, the Court Should Appoint Class Counsel and Class Representatives.**

*1.  Appointment of Class Counsel.*

Proposed Class Counsel all have substantial experience in prosecuting and settling complex class actions, including those that involve environmental contamination or pollution. This Court has previously recognized their capacity to manage and oversee complex litigation by appointing all of them as interim class counsel.[82] Proposed Class Counsel have the resources to oversee the Settlement for the Class Members.

Accordingly, because proposed Class Counsel are well prepared to represent the Class Representatives and the interests of the Class Plaintiffs respectfully request that the Court appoint Chase T. Brockstedt and Philip C. Federico of Baird Mandalas Brockstedt & Federico LLC; T.

---

[81] *Id*. at 275.
[82] ECF No. 46.

David Hoyle of Motley Rice LLC; and Richard A. Harpootlian of the Richard A. Harpootlian Law Firm, P.A. as Class Counsel.

2.  *Appointment of Class Representatives.*

As discussed above, Plaintiffs' claims are typical of the claims of the Class Members, and the claims share commonality. Plaintiffs are adequate representatives of the Class Members because no conflicts of interest exist between the two.

As to the Settlement itself, the Class Representatives have carefully read, know, and understand the full contents of the Settlement Agreement and they voluntarily entered into this Settlement Agreement after having consulted with Class Counsel. The Court should appoint these Class Representatives to represent the Settlement Class.

**D.  The Court Should Commence the Notice Process by Approving the Proposed Form of Notice and Notice Plan, and by Appointing the Notice Administrator.**

As discussed above, the Notice Plan was designed to provide the best notice that is practicable under the circumstances and to fully comport with due process requirements, and Rule 23.[83] The Notice Plan provides for individual direct notice via mail and email to all reasonably identifiable Class Members, publication notice in three prominent newspapers, and the implementation of a dedicated website and toll-free telephone line.[84]

Accordingly, the Court should approve the appointment of Mike Lee of RG/2 Claims Administration, LLC as Notice Administrator; approve the Notice Plan; direct Notice to begin; and set a date no less than forty-five (45) calendar days after commencement of the dissemination

---

[83] Fed. R. Civ. P. 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."
[84] Notice Plan, attached as Exhibit C.

of Notice as the deadline for the filing of Objections and Requests for Exclusion, and a date no less than sixty (60) days for a deadline to Register to participate in the allocation of Settlement Funds.

### E. The Court Should Establish a Qualified Settlement Fund

Plaintiffs seek the entry of an Order establishing a QSF. The QSF shall be a qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation sections 1.468B-1 *et seq.*, and shall be administered in accordance with the requirements of those Treasury regulations, as detailed in the Settlement Agreement and Escrow Agreement.[85] The establishment of the Fund as a "qualified settlement fund" under the Code and Regulations, subject to the Court's continuing jurisdiction, is vital to the satisfaction of these objectives of the parties' Settlement.[86]

Upon final distribution of all Settlement Funds received into the QSF and allocated to Qualifying Class Members, the administrator of the QSF and Special Master shall take appropriate steps to wind down the QSF and thereafter be discharged from any further responsibility with respect to the QSF.

Proposed Class Counsel request that the Court additionally approve the use of Sandy Springs Bank, a federally insured depository institution, for the establishment of the QSF.

---

[85] *Id.*

[86] Section 1.468B-1(c)(1) of the Regulations expressly requires that a qualified settlement fund be "established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality(including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

**F.  The Court Should Appoint Judge Marina Corodemus (Ret.) as Special Master**

As set forth above, Judge Corodemus (Ret.) is well-qualified to serve as Special Master and assist in allocating the available settlement proceeds between participating Class Members. Her appointment upon preliminary approval will permit her to begin assessing registered claims for the purpose of reaching allocation decisions.  Accordingly, the Plaintiffs respectfully request the appointment of Judge Corodemus (Ret.) as Special Master for purposes of allocating the Settlement Funds pursuant to the proposed Allocation Methodology.[87]

**G.  The Court Should Schedule a Final Fairness Hearing.**

Plaintiffs respectfully request that the Court schedule a Final Fairness Hearing to consider the fairness, reasonableness, and adequacy of the Settlement Agreement under Federal Rule of Civil Procedure 23(e)(2), and to determine whether the Order Granting Final Approval should be entered.[88]

Once the Court schedules the Final Fairness Hearing, the date shall be communicated to the Class Members so as to provide the Class Members with sufficient notice.

---

[87] Allocation Methodology attached as Exhibit B.

[88] Fed. R. Civ. P. 23(e)(2) provides: "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order that grants the instant motion by:

(1) preliminarily approving the proposed Settlement Agreement;

(2) preliminarily certifying, for settlement purposes only, the Settlement Class;

(3) approving the form of Notice of the Settlement Class;

(4) approving the Notice Plan, and directing the commencement of, the Notice Plan;

(5) appointing Class Counsel;

(6) appointing Class Representatives;

(7) appointing the Notice Administrator;

(8) appointing the Claims Administrator;

(9) appointing the Special Master;

(10) establishing a Qualified Settlement Fund;

(11) scheduling the Final Fairness Hearing;

(12) setting a Bar Date for the submission of claims; and

(13) granting any other relief deemed necessary or appropriate by the Court.


Respectfully submitted,

By:     /s/ T. David Hoyle
        Joseph F. Rice (Fed. ID No. 3445)
        Fred Thompson, III (Fed. ID No. 4081)
        T. David Hoyle (Fed. ID No. 9928)
        W. Taylor Lacy (Fed. ID No. 9929)
        Meredith Clark (Fed. ID No. 12075)
        Rebecca Fonseca (Fed. ID No. 13297)
        MOTLEY RICE LLC
        28 Bridgeside Blvd.
        Mt. Pleasant, South Carolina 29464
        (843) 216-9000

jrice@motleyrice.com
fthompson@motleyrice.com
dhoyle@motleyrice.com
wlacy@motleyrice.com
mkclark@motleyrice.com
rfonseca@motleyrice.com

Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No. 12816)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, South Carolina 29202
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

Chase T. Brockstedt
*Pro Hac Vice*
BAIRD MANDALAS BROCKSTEDT & FEDERICO LLC
1413 Savannah Road, Suite 1
Lewes, Delaware 19958
302-645-2262
chase@bmbde.com

Catherine M. Cramer
*Pro Hac Vice*
BAIRD MANDALAS BROCKSTEDT & FEDERICO LLC
2711 Centerville Rd., Suite 401
Wilmington, DE 19808
302-327-1100
ccramer@bmbfclaw.com

Philip C. Federico
Brent P. Ceryes
Matthew P. Legg
*Pro Hac Vice*
BAIRD MANDALAS BROCKSTEDT & FEDERICO LLC
2850 Quarry Lake Drive
Suite 220
Baltimore, MD 21209
410-421-7777
pfederico@bmbfclaw.com
bcereyes@bmbfclaw.com
mlegg@bmbfclaw.com

Thomas E Pope (Fed ID No. 4947)
Ben P. Leader (Fed ID No. 11923)
ELROD POPE LAW FIRM
P.O. Box 11091
Rock Hill, SC 29731
803-324-7574
tpope@elrodpope.com
bleader@elrodpope.com

Leonidas E. "Leon" Stavrinakis (Fed ID No. 6552)
STAVRINAKIS LAW FIRM
1 Cool Blow Street, Suite 201
Charleston, SC 29403
843-724-1060
leon@lawleon.com

Gary V. Mauney
To be admitted *Pro Hac Vice*
MAUNEY PLLC
Two SouthPark Center
6135 Park South Dr, Suite 510
Charlotte, NC 28210
704-945-7185
garymauney@mauneypllc.com


*Counsel for Plaintiffs*

Dated: May 29, 2024
Mount Pleasant, South Carolina