**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

|  |  |  |
|---|---|---|
| | ) | Case No.: 0:21-CV-01480-SAL |
| IN RE: NEW INDY EMISSIONS LITIGATION | ) | 0:21-CV-01704-SAL |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**<u>PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT AND MEMORANDUM IN SUPPORT</u>**

## Table of Contents

Table of Authorities..............................................................................................................iv

I.    INTRODUCTION AND SUMMARY ...............................................................................1

II.    PROCEDURAL HISTORY.............................................................................................2

   A.   The Class Action Complaint and Litigation History...............................................2

   B.   History of Settlement Negotiations and Mediation ................................................3

   C.   Preliminary Approval ............................................................................................4

III.   MATERIAL TERMS OF THE PROPOSED CLASS SETTLEMENT.............................7

   A.   Consideration .........................................................................................................7

   B.   Allocation of the Settlement Proceeds ...................................................................8

   C.   Court Appointments ............................................................................................10

      1.   Notice Administrator ......................................................................................10

      2.   Claims Administrator .....................................................................................11

      3.   Special Master and Claims Adjudicator ..........................................................11

   D.   Payment of Attorneys' Fees .................................................................................12

IV.   THE NOTICE PLAN.................................................................................................12

V.   ARGUMENT.............................................................................................................13

   A.   The Proposed Settlement Class Should Be Certified Under Federal Rule of Civil
Procedure 23........................................................................................................13

      1.   The Requirements of Rule 23(a) are satisfied. ...............................................13

         a.   Ascertainability ........................................................................................14

         b.   Rule 23(a)'s Numerosity Requirement is Satisfied....................................15

         c.   Rule 23(a)'s Commonality Requirement is Satisfied..................................15

         d.   Rule 23(a)'s Typicality Requirement is Satisfied. ....................................17

         e.   Rule 23(a)'s Adequacy of Representation Requirement is Satisfied. ........18

      2.   The Requirements of Rule 23(b)(3) are Satisfied. ..........................................19

   B.   This Proposed Settlement Should be Approved under Rule 23(e)(2) as Rule 23(e)(2) and
the Jiffy Lube Factors Support Granting Final Approval of the Settlement. ...........20

      1.   The Settlement is Fair, Reasonable and Adequate Taking Into Account the Costs, Risks,
and Delays of Trial and Appeals (Rule 23(e)(2)(C)(i)). .......................................22

         a.   The Advanced Posture of the Case at the Time of the Settlement Supports Approval
of the Settlement (Jiffy Lube Fairness Factor 1). .............................................22

         b.   The Extent of Discovery Conducted Supports Approval of the Settlement (Jiffy
Lube Fairness Factor 2). ...................................................................................23

c.    The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B)) and There is No Existence of Fraud or Collusion Behind the Settlement (Jiffy Lube Fairness Factor 3). .. 23

d.    Counsel's Experience in this Type of Case and Opinions Supporting the Settlement Weigh in Favor of Approval of the Settlement (Jiffy Lube Fairness Factor 4).................. 24

2.    The Settlement Provides Adequate Compensation to the Class..................................... 25

a.    The Strength of Plaintiffs' Case on the Merits and Defendants' Defenses Weigh in Favor of Approval of the Settlement (Jiffy Lube Adequacy Factors 1&2)...................... 26

b.    The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Approval of the Settlement (Jiffy Lube Adequacy Factor 3)............................................. 27

c.    The Insolvency Risk of the Defendants and Likelihood of Recovery on a Litigated Basis Supports Approval of the Settlement (Jiffy Lube Adequacy Factor 4). ................... 28

3.    The Class Representatives and the Undersigned Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)). ............................................................................. 29

4.    The Relief Provided is Adequate, Taking Into Account the Terms of Any Proposed Award of Attorneys' Fees (Rule 23(e)(2)(C)(iii))................................................................... 30

5.    The Relief Provided is Adequate, Taking Into Account Any Agreement Required to be Identified Under Rule 23(e)(3) (Rule 23(e)(2)(C)(iv))........................................................ 31

6.    The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)). ................................................................................................................................. 32

7.    Given that there are no Objections and very small number of Opt-Outs, the Overall Reaction of the Class Overwhelmingly Supports Approval (Jiffy Lube Adequacy Factor Five)........................................................................................................................................... 33

VI.    CONCLUSION................................................................................................................ 34

# Table of Authorities

## Cases

*1988 Trust for Allen Children Dated 8/8/88*, 28 F.4th 513 (4th Cir. 2022). ................................ 18

*Bass v. 817 Corp.,* 2017 U.S. Dist. LEXIS 225380 (D.S.C. Sept. 19, 2017)................................ 25

*Beaulieu v. EQ Indus. Servs., Inc*., 2009 WL 2208131 (E.D.N.C. July 22, 2009)........................ 15

*Case v. French Quarter III LLC*, 2015 WL 12851717 (D.S.C. July 27, 2015) ............................ 26

*Comm'r v. Costco Wholesale Corp.*, 340 F.R.D. 242, 247 (D.S.C. 2021)................. 13, 16, 17, 22

*Decohen v. Abbasi, LLC*, 299 F.R.D. 469 (D. Md. 2014) ............................................................ 28

*Deiter v. Microsoft Corp.,* 436 F.3d 461 (4th Cir. 2006)............................................................. 17

*Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ................................................... 14, 25

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147(1982) ................................................................... 18

*Gray v. Talking Phone Book*, 2012 U.S. Dist. LEXIS 200804 (D.S.C. Aug. 10, 2012) .............. 26

*Hart v. J.H. Baxter & Co., Inc.*, No. 6:21-cv-00663-MK, 2023 WL 2918632 (D. Or. Mar. 14, 2023)............................................................................................................................................ 16

*Horn v. Gov't Emps. Ins. Co*., 86 Fed. Appx. 405 (10th Cir. 2004) ............................................ 15

*In re: Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2021 WL 248471 (D.S.C. Jan. 25, 2021) ............................................................................................ 18, 19

*In re: Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) .......................................................... 20

*In re LandAmerica § 1031 Exch. Servs. Inc. IRS § 1031 Tax Deferred Exch. Litig.,*2012 U.S. Dist. LEXIS 97933 (E.D.Va. April 15, 2009) ........................................................................... 27

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod., Marketing, Sales Prac. and Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020)......................................................... 22

*In re: Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227 (4th Cir. 2021).......................................... 15

*Kirven v. Cent. States Health & Life Co*., 2015 U.S. Dist. LEXIS 36393 (D.S.C 2015).............. 33

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .................................................. 14

*Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800-JFA, 2015 U.S. Dist. LEXIS 1765

  (D.S.C. Jan. 8, 2015) ........................................................................................................ 18

*Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021) .......................................................................... 13

*Robinson v. Carolina First Bank NA*, 2019 U.S. Dist. LEXIS 26450 (D.S.C. Feb. 14,

  2019) ........................................................................................................................... 24, 25

*Rowe v. E.I. du Pont de Nemours & Co.*, 262 F.R.D. 451 (D.N.J. 2009) ..................................... 16

*S.C. Nat. Bank v. Stone*, 139 F.R.D. 335 (D.S.C. 1991) ........................................................ 24, 27

*Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003) ................................................ 19

*Stillmock v. Weis Mkts., Inc.,* 385 F. App'x. 267 (4th Cir. 2010) ................................................ 19

*Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2019 WL 8272995 (D. Vt. Aug. 23,

  2019) ................................................................................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 16

*Williams v. Henderson*, 129 F. App'x 806 (4th Cir. 2005)………………………………………15

## **Statutes**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

## **Other Authorities**

7AA Wright & Miller, Fed. Prac. and Proc. § 1779 (3d ed. 2005) ............................................... 20

*Newberg on Class Actions* § 11.50 (4th ed.) .............................................................................. 28

## I. **INTRODUCTION AND SUMMARY**

Class Representatives Kenny N. White, Candice Cherrybone, Shane Nickell, Tracie Nickell, Amanda Swager, Shara Swager, Terri Kennedy, Marty Kennedy, Enrique Lizano, Sansanee Lizano, Melda Gain, and Orrin Gain, ("Plaintiffs" or "Class Representatives"[1]), respectfully request the Court enter an order granting final approval of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement") between Plaintiffs and New-Indy Catawba, LLC ("New Indy Catawba"), and New-Indy Containerboard, LLC ("New Indy Containerboard") (collectively, "NI" or "Defendants"), filed with the Court on May 29, 2024,[2] to resolve claims related to alleged air contamination and pollution from a paper mill ("Mill") within a South Carolina community. The Settlement Agreement, which was preliminarily approved by this Honorable Court's Order dated June 5, 2024,[3] provides for the creation of an $18 million fund in satisfaction of claims for damages for a defined class of residents near the Mill, as well as attorneys' fees and expenses.[4] The Settlement Agreement also provides a Claims Adjudicator-directed process by which eligible Class Members may recover damages related to their individual claims. In addition, and as discussed below, Defendants have separately agreed to undertake remedial activities valued at $85 million to resolve the CWA/RCRA Action, the PSD Action, and the Intervention Action which have been brought before this Honorable Court.[5]

---

[1] As per the Court's June 5, 2024, Order, the above-noted Plaintiffs have been appointed as Class Representatives. *See* ECF No. 352, ¶ 5. Unless otherwise defined or stated, all capitalized terms shall have the same meanings contained in the Motion for Preliminary Approval of Settlement.

[2] ECF No. 334.

[3] ECF No. 352, *passim.*

[4] Settlement Agreement, Ex. 1 to ECF No. 334.

[5] As used herein, CWA/RCRA Action refers to the lawsuit pending as Civil Action No. 0:23-cv-00602-SAL before this Honorable Court. Likewise, the Intervention Action means the lawsuit filed and docketed as Civil Action No. 22-cv-02053-SAL (D.S.C.) and currently on appeal to the United States Court of Appeals for the Fourth Circuit as Appeal No. 23-1052. Furthermore, PSD Action

Pursuant to the Court's June 5, 2024 Order granting preliminary approval, Plaintiffs now bring this unopposed motion seeking final approval of the Settlement Agreement between Plaintiffs and Defendants. Plaintiffs and Class Counsel believe the Settlement to be fair, reasonable, and adequate. Accordingly, Plaintiffs now move this Court for an Order granting final approval of: (1) the Settlement Class; (2) the Settlement Agreement and Allocation Plan; (3) the form of Notice of the Settlement Class; (4) the Notice Plan; (5) the appointment of Class Counsel; (6) the appointment of Class Representatives; (7) the appointment of RG/2 Claims as the Claims Administrator; (8) the appointment of Judge Marina Corodemus (Ret.) as the Special Master; (9) the establishment of a Qualified Settlement Fund; (10) the grant of service awards in the amount of $10,000 to each of the Current Class Representatives[6]; (11) the grant of service awards in the amount of $5,000 to each of the Former Class Representatives[7]; and (12) granting any other relief deemed necessary or appropriate by the Court.

## II. PROCEDURAL HISTORY

### A. The Class Action Complaint and Litigation History

On May 18, 2021, Plaintiffs filed a Class Action Complaint against New Indy. On September 23, 2021, the parties filed a motion to consolidate the class action complaints.[8] On

---

refers to the lawsuit filed and docketed as Civil Action No. 0:22-cv-02366-SAL (D.S.C.), also currently on appeal to the United States Court of Appeals for the Fourth Circuit as Appeal No. 23-1988.

[6] As used herein, the phrase "Current Class Representatives" is defined as including the following individuals: Kenny N. White, Candice Cherrybone, Shane Nickell, Tracie Nickell, Amanda Swager, Shara Swager, Terri Kennedy, Marty Kennedy, Enrique Lizano, Sansanee Lizano, Melda Gain, and Orrin Gain.

[7] As used herein, the phrase "Former Class Representatives" is defined as including the following individuals: John Hollis, Krista Manus-Cook, Jean Hivanec, Kathleen Moran, Shirley Landsdown, and Ethel Piercy.

[8] ECF No. 35.

December 8, 2021, the Court granted the motion to consolidate.[9] On December 15, 2021, Plaintiffs filed an Amended Consolidated Class Action Complaint on behalf of themselves and all others similarly situated.[10]

Throughout the course of the litigation, Plaintiffs' Counsel conducted extensive discovery, including document review and the taking or defending of over fifty depositions. In addition, and as discussed below, Plaintiffs' Counsel engaged in extensive motions practice and argued those motions before this Court on multiple occasions.

### B. History of Settlement Negotiations and Mediation

The parties engaged in three separate mediations in this matter over the course of the multiple-years long litigation. The parties first engaged in an initial exchange of mediation position statements, for the purposes of preliminary exploratory settlement discussions, and selected Eric D. Green as a mediator to facilitate those discussions in November 2022. Following the exchange of initial mediation materials, the parties proceeded to litigate the matter for another ten months, including extensive fact discovery, fact depositions, and the production of expert witness reports. The parties attended a first mediation in this matter on September 26 and 27, 2023, in Boston, Massachusetts with Eric D. Green. After the mediation concluded without settlement, the parties proceeded with further litigation in the matter. The parties engaged in a second mediation in Boston, Massachusetts with Eric D. Green on December 6, 2023. Following this second mediation, the parties continued litigation, including motions practice on class certification, motions *in limine*, Daubert issues, and summary judgment on parent company liability. Following oral argument on these motions, the parties engaged in a final mediation with the Hon. Shiva Hodges, on April 18,

---

[9] ECF No. 42.
[10] ECF No. 46.

2024 and April 25, 2024. Following this final mediation, the parties were able to successfully finalize the settlement for the benefit of the proposed class.

### C. Preliminary Approval

On May 29, 2024, Class Counsel filed an unopposed Motion for Preliminary Approval of Class Action Settlement Agreement and Other Relief (the "Preliminary Approval Motion").[11] In addition to seeking preliminary approval of the Settlement Agreement, the Preliminary Approval Motion requested that the Court: (1) certify, for settlement purposes only, the Settlement Class; (2) approve the form of Notice of the Settlement Class; (3) approve the Notice Plan, and direct the commencement of, the Notice Plan; (4) appoint Class Counsel; (5) appoint Class Representatives; (6) appoint the Notice Administrator; (7) appoint the Claims Administrator; (8) appoint the Special Master; (9) establish a Qualified Settlement Fund; (10) schedule the Final Fairness Hearing; (11) set a Bar Date for the submission of claims; and (12) grant any other relief deemed necessary or appropriate by the Court.

On June 5, 2024, the Court issued an order granting the Motion for Preliminary approval[12], and found that: (1) the Settlement Agreement resulted from extensive arm's length negotiations through mediation and directed discussion; and (2) the Settlement Agreement and accompanying Plan of Allocation and other documentation were sufficient to warrant notice of the Settlement Agreement to Settlement Class Members and a full hearing on the approval of the Settlement Agreement. Pursuant to the Settlement Agreement and for purposes of the Motion for Preliminary Approval only, the court certified the following Settlement Class pursuant to Federal Rule of Civil Procedure Rule 23:

All Persons who meet any of the following criteria:

---

[11] ECF No. 334.
[12] ECF No. 336.

(a) during the period from January 31, 2021, until September 11, 2021, owned a single-family home located in whole or in part within the Class Settlement Impact Area 2; or

(b) spouses or children of those who, during the period from January 31, 2021, until September 11, 2021, owned a single-family home located in whole or in part within the Class Impact Area, and resided at that home for at least 30 days between January 31, 2021, until September 11, 2021; or

(c) retained the representation of interim class counsel in connection with alleged emissions from New Indy on or before April 25, 2024, as set forth on the list attached as Exhibit B to the Class Action Settlement Agreement.

Excluded from the definition of the class are: (1) Defendants; (2) any entity in which Defendants have a controlling interest; (3) any Person with an ownership interest in Defendants; (4) any current or former officer or director of Defendants; (5) any current or former employee of any Defendant with respect to any potential exposure during their employment by such Defendant; (6) Persons who have entered into separate settlement agreements with any Defendant related to claims similar to those claims made in the Action; and (7) the legal representatives, successors, or assigns of Defendants.[13]

In connection with this preliminary certification, the Court made the following findings for purposes of the Motion and Settlement Agreement only:

a. The Settlement Class appears to be so numerous that joinder of all members is impracticable;

b. The class definition is ascertainable, and the class is defined using objective criteria to establish a membership with definitive boundaries;

c. There appear to be questions of law or fact common to the Settlement Class for purposes of determining whether this Settlement should be approved;

d. The Class Representatives' claims appear to be typical of the claims being resolved through the proposed Settlement;

e. The Class Representatives appear to be capable of fairly and adequately protecting the interests of the Settlement Class;

f. The questions of law or fact common to the Settlement Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

---

[13] ECF No. 336, at 3.

Furthermore, in its June 5, 2024 Order, the Court also:

- Appointed Kenny N. White, Candice Cherrybone, Shane Nickell, Tracie Nickell, Amanda Swager, Shara Swager, Terri Kennedy, Marty Kennedy, Enrique Lizano, Sansanee Lizano, Melda Gain and Orrin Gain as Class Representatives.[14] Appointed Chase T. Brockstedt and Philip C. Federico of Baird Mandalas Brockstedt & Federico LLC; T. David Hoyle of Motley Rice LLC; and Richard A. Harpootlian of the Richard A. Harpootlian Law Firm, P.A. as Class Counsel.[15]

- Preliminarily approved the Notice Plan,[16] designating RG/2 Claims Administration LLC as Notice Administrator and Claims Administrator and finding that giving Class Members notice of the Settlement Agreement was justified under Rule 23(e), Fed. R. Civ. P., because the Court determined that it would likely be able to approve the Settlement under Rule 23(e) and certify the Settlement Class for purposes of judgment.[17]

- Preliminarily approved the method of notice proposed, and ordered that Plaintiffs, through the Claims Administrator, provide publication notice of this Preliminary Approval Order and the Settlement Agreement pursuant to the Notice Plan,[18] finding the program of class notice described in the Notice Plan and the manner of its dissemination was consistent with Rule 23(c)(2), Fed. R. Civ. P.,[19] and that the program of class notice represented the best practicable notice under the circumstances and was reasonable,[20] and that the class notice program constituted due, adequate, and sufficient notice to all persons entitled to receive notice such that it meets the requirements of due process, Rule 23(e), Fed. R. Civ. P.[21]

- Specified that any Settlement Class Member who did not timely submit a written objection in accordance with the specified procedures would: (1) be deemed to have waived their right to object to the Settlement Agreement; (2) be foreclosed from objecting (whether by subsequent objection, intervention, appeal, or any other process) to the Settlement Agreement; (3)

---

[14] *Id.*

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* (holding the notice was reasonably calculated to apprise Class Members of the nature of this litigation; the scope of the Settlement Class; a summary of the class claims; that the Court will exclude the Class Members if they so request by a specified date; that the judgment will include all members who do not request exclusion; and that any member who does not request exclusion may object to the terms of this settlement and/or enter an appearance through their counsel).

[21] *Id.* at 5.

not be entitled to speak at the Final Approval Hearing; and (4) be precluded from seeking any review of the Settlement Agreement and/or the Final Approval Order and judgment by appeal or other means.[22]

- Preliminarily approved the establishment of a Qualified Settlement Fund ("QSF"), and appointed Sandy Springs Bank as the financial institution that will hold settlement funds.[23]

- Preliminarily approved specific appointments, including RG/2 Claims Administration LLC ("RG/2 Claims") as the Administrator of the QSF, the Notice Administrator, and the Claims Administrator, and Judge Marina Corodemus as Special Master for the purposes of administering the Allocation Plan.[24]

Furthermore, the Court scheduled a Fairness Hearing to be held before the Honorable Sherri A. Lydon on Thursday, September 5, 2024, at 10:00 a.m., at the Matthew J. Perry Courthouse, for the purpose of determining: (1) whether the Settlement Class should be certified; (2) whether the Settlement Agreement is fair, adequate, and reasonable; (3) whether to enter a Final Judgment in this Action; and (4) to consider Plaintiffs' Motion for Attorneys' Fees and Costs.

### III. MATERIAL TERMS OF THE PROPOSED CLASS SETTLEMENT

#### A. Consideration

The Settlement Agreement requires Defendants to pay $18 million ("Settlement Funds") in full satisfaction of Plaintiffs' and Class Members' claims for damages arising from acts of the Defendants or harm incurred during the Class Period, defined as January 31, 2021, to the effective date of the settlement, including attorneys' fees, costs, and expenses.

The Settlement Funds are required to be paid in three installments, such that 28.57% shall be paid within five (5) days of Preliminary Approval; 28.57% of the total, shall be paid on June 5, 2025, the one-year anniversary of Preliminary Approval; and the third, the balance of 42.86% of

---

[22] *Id.* at 7.
[23] *Id.* at 5.
[24] *Id.* at 4-6.

the total shall be paid on June 5, 2026, the two-year anniversary of Preliminary Approval. Pursuant to the Settlement Agreement, no Settlement Funds will be disbursed or distributed until and unless final approval is granted and the time for all appeals has expired.

Defendants shall not be entitled to a return of any portion of the settlement amount if the Settlement Agreement is finally approved. If the Settlement Agreement is not finally approved, all payments are to be returned to Defendants.

A QSF was established to receive the settlement proceeds. Following the final approval of this Court, funds in the QSF will be allocated and amounts will be distributed to class members in accordance with the Allocation Methodology described below and further detailed in Exhibit A. Legal fees, costs, and expenses will likewise be subject to the approval of this Court prior to payment from the QSF.

### B. Allocation of the Settlement Proceeds

As set forth above, Plaintiffs proposed, and the Court preliminarily approved, the appointment of Judge Marina Corodemus, of Corodemus & Corodemus, LLC, to serve as Claims Adjudicator and Special Master. Judge Corodemus has developed an Allocation Methodology, attached as Exhibit A, which this Court has preliminarily approved. The Class Settlement provided that a Class Member will neither be allocated nor receive their share of the Settlement Funds unless they timely submit a complete Registration Form.[25] Settlement Funds will then be divided among qualifying, registered Class Members as determined by a Claims Adjudicator.[26]

Upon Final Approval of the class settlement, proceeds of this settlement will be allocated by a Court-Appointed Special Master, in accordance with the Allocation Methodology, which

---

[25] Registration Form, Exhibit B, Attachment 2.
[26] Ex. 1 to ECF No. 334, Settlement Agreement.

considers the relative damages incurred by each Class Member. The Allocation Methodology provides for an initial calculation of damages, as determined by the following tiers, utilizing distance from the Mill as a proxy for exposure. Nuisance damages shall be payable to property owners, and negligence damages shall be payable to property owners, their spouses and children:

> **<u>Tier 1-Nuisance</u>**: Claimants/Properties within six (6) miles of the Facility as of January 31, 2021. Sixty (60) percent of the net settlement fund will be allocated for registered claims among the estimated 1,903 properties in Tier 1.

> **<u>Tier 2-Nuisance</u>**: Claimants/Properties within six (6) to ten (10) miles of the Facility as of January 31, 2021.   Eight (8) percent of the net settlement fund will be allocated for registered claims among the estimated 378 properties in Tier 2.

> **<u>Tier 3-Nuisance</u>**: Claimants/Properties within ten (10) to twenty (20) miles of the Facility as of January 31, 2021.   Four (4) percent of the net settlement fund will be allocated for registered claims among the estimated 147 properties in Tier 3.

> **<u>Tier 4-Negligence</u>**: Claimants who resided within six (6) miles of the Facility as of January 31, 2021, and who sustained transient personal injury health effects related to the emissions from the Facility at any time from January 31, 2021, to the present. Twenty (20) percent of the net settlement funds will be allocated for registered claims among the estimated 4,840 Claimants in Tier 4.

> **<u>Tier 5-Negligence</u>**: Claimants who resided within six (6) to twenty (20) miles of the Facility as of January 31, 2021, and who sustained transient personal injury health effects related to the emissions from the Facility at any time from January 31, 2021, to the present. Eight (8) percent of the net settlement funds will be allocated for registered claims among the estimated 1,235 Claimants in Tier 5.

To the extent that registered claimants are dissatisfied with their initial award, the Allocation Methodology provides for a reconsideration by the Special Master, consistent with relevant and applicable legal criteria for liability and damages. The Court Appointed Special Master will evaluate each claim and categorize each claimant to determine fair, reasonable, and equitable compensation based upon the established categories of damages and the Allocation Plan. In doing so, the Court Appointed Special Master will utilize the categories and additional factors noted in the Allocation Plan. Following notification to each claimant of their allocation, a period

will be provided during which each claimant may appeal to the Court Appointed Special Master before the allocation becomes final.

Additionally, through this litigation, a variety of individuals have served as named Class Representatives and have undertaken several activities beneficial to the litigation, including, but to not limited to, answering written discovery and sitting for depositions. Plaintiffs have sought leave of the Court in their Motion in Support of Attorneys' Fees and Costs for an Award for Class Representatives to provide those named Class Representatives with a nominal award for their service in the Action. Defendants have taken no position on whether such awards should be granted or on the amounts of any such award, and the Parties have made no agreement on this point.

### C. Court Appointments

The Settlement Agreement contemplated that the Court would appoint three independent neutral persons to administer the Settlement: (1) a Notice Administrator; (2) a Claims Administrator; and (3) a Special Master. All fees, costs, and expenses incurred in the administration and/or work by the Notice Administrator, the Claims Administrator, and the Special Master shall be paid from the Settlement Funds. This motion requests their appointment.

#### 1. *Notice Administrator*

The Court designated RG/2 Claims Administration LLC, ("RG/2 Claims"), whose address is 30 South 17th Street, Philadelphia, PA 19103, to serve as the Notice Administrator. RG/2 Claims is a boutique class action claims administration firm with a nationwide presence founded by seasoned class action practitioners and highly credentialed tax professionals. RG/2 Claims further has extensive experience in designing and implementing class notice programs, as described in the Notice Plan. As set forth in her attached declaration being filed concurrently here as Exhibit C,

Melissa Baldwin, Director of Claims Administration for RG/2 Claims, has executed the Notice Plan, which is described below.

### 2. *Claims Administrator*

Likewise, the Court's preliminary approval order designated RG/2 Claims as Claims Administrator. In addition to its experience in designing and implementing class notice programs, RG/2 Claims has extensive experience providing claims administrative services, having administered in excess of $2.1 billion in class action settlement funds.

RG/2 Claims will assist the Special Master in the collection of Registration Forms, obtaining any additional information necessary to support the Special Master's determinations, and communicating with Class Members regarding the allocation process and determinations.

### 3. *Special Master and Claims Adjudicator*

The Court appointed Judge Marina Corodemus as Special Master for purposes of administering the Allocation Plan in its June 5, 2024, preliminary approval order. Plaintiffs now seek final approval of that appointment on the grounds that Judge Corodemus is a highly experienced professional in Alternative Dispute Resolution ("ADR") and a sought after special master by federal and state courts involving class actions, mass torts, environmental contamination, natural resource damages, products liability, consumer fraud, and serious aggregate litigation.[27] She brings over ten years experience on the bench as New Jersey's sole Mass Tort Judge. Judge Corodemus has experience serving as a Special Master responsible for allocating damages in environmental tort matters, including in the matter of *Zimmerman v. 3M Co. et al.*, 1:17-cv-01062, in the U.S. District Court for the Western District of Michigan, wherein Judge Corodemus was responsible for allocating a $54 million settlement fund for damages arising from

---

[27] Curriculum Vitae of Hon Marina Corodemus (Ret.), attached as Exhibit D.

PFAS exposure. Judge Corodemus also served as Special Master for dePuy Orthopaedics, Inc., *ASR Hip Implant Products* and oversaw the appeals and fee disputes associated with the $2.7 billion settlement. She also served as Special Master for *American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation* and *Vioxx: Products Liability Litigation.*

### D.  Payment of Attorneys' Fees

Plaintiffs' Counsel filed a Petition with the Court for attorneys' fees, reimbursement of costs and expenses, and the issuance of service awards on July 22, 2024.[28] In this litigation, Plaintiffs' Counsel requested a legal fee 20% of the proposed class settlement amount, or $3,600,000.00, plus payment of reasonable litigation costs, which separately total $4,029,444.44.[29] Particularly as allocation determinations are not likely to be reached until the Spring of 2025, Plaintiffs' Counsel requests full reimbursement of advanced costs from the first installment, following the Court's final approval of the class settlement and this Court's Order on attorneys' fees and reimbursement of expenses.

### IV. THE NOTICE PLAN

Plaintiffs' Counsel worked with RG/2 Claims to develop a Notice program that met Rule 23's requirements and due process.[30] The Court approved Plaintiffs' proposed Notice Plan, finding it was consistent with Rule 23(c)(2), represented the best practicable notice under the circumstances, and was reasonably calculated to apprise Class Members of the facts of this litigation and their rights with respect to the Settlement Agreement.

Following preliminary approval, pursuant to the Court's order, Class Counsel directed class notice through RG/2 Claims, pursuant to the Court-approved notice plan. The notice campaign was

---

[28] ECF No. 356.
[29] *Id*. at 5.
[30] Notice Plan, attached as Exhibit E.

robust. The Notice of Proposed Settlement, Class Settlement Impact Area Map, Class Action Registration Form, and Request for Exclusion Form (collectively, the "Notice package"), and information related to the Fairness Hearing was provided by mail to all residences within the class on June 21, 2024, that were identified via property records.[31] Concurrent with the mailing of the Notice package, Notice was further provided through publication in select newspapers between June 24, 2024, and June 26, 2024,[32] as well as online at a website set up for this purpose June 21, 2024.[33] The parties now seek final approval of the Settlement Agreement and other related relief necessary to implement the terms of this settlement.

## V.  **ARGUMENT**

### A.  **The Proposed Settlement Class Should Be Certified Under Federal Rule of Civil Procedure 23.**

#### 1.  *The Requirements of Rule 23(a) are satisfied.*

A proposed settlement class satisfies the requirements for class certification under Rule 23(a), if it meets the following requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[34] The Fourth Circuit also recognizes that "Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable" or ascertainable.[35]

The court in assessing the final settlement, however, should not turn the settlement hearing into a rehearsal of the trial, undertaking an in-depth consideration of the factors; nor should the

---

[31] *Id.*

[32] The notices in *The Charlotte Observer* and *The Herald (Rock Hill)* were on published June 24, 2024.  The notice in *The State (Columbia)* was published on June 26, 2024.

[33] *See* Ex. B.

[34] Fed. R. Civ. P. 23(a).

[35] *Peters v. Aetna Inc*., 2 F.4th 199, 241-42 (4th Cir. 2021) (internal citations omitted); *see also Comm'r v. Costco Wholesale Corp.*, 340 F.R.D. 242, 247 (D.S.C. 2021).

Court decide the merits of the case or resolve unsettled legal questions, but rather it should "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision."[36]

### a. Ascertainability

In analyzing any class action, the Fourth Circuit has imposed a non-textual condition that "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria."[37] This requirement is often called "ascertainability," where "[t]he goal is not to identify every class member at the time of certification, but to define a class in such a way as to ensure that there will be some administratively feasible [way] for the court to determine whether a particular individual is a member at some point."[38] This requirement will be met so long as the putative class is able to be "identified on a large-scale basis, and notified of the class action accordingly."[39]

As detailed above, the Settlement Class meets this requirement because the putative Class Members it includes are objectively described, readily identifiable, and ascertainable by reference to publicly available information. Individuals can meet the objective criteria of the class definition based on: (1) retention of class counsel, each of whom are identified in Exhibit B to the Class Settlement Agreement; (2) by property ownership within a defined geographic area, circumscribed by an ESRI Shapefile; or (3) by legally recognized family relationship with such a property owner and residency during a defined period. The Claims Administrator may rely upon both publicly available data, as well as any supporting materials provided by Class Members, to objectively

---

[36] *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).
[37] *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654-55 (4th Cir. 2019).
[38] *Id.* at 658 (internal quotation marks omitted).
[39] *Id.*

evaluate whether Class Members meet these criteria.[40] For this reason, the Fourth Circuit's ascertainability requirement is satisfied.

### b.  Rule 23(a)'s Numerosity Requirement is Satisfied.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."[41] The Fourth Circuit has found numerosity satisfied where the proposed class included only thirty members.[42] This Class includes significantly more individuals and households, as detailed above. The large number of individuals in the proposed Class make joinder an unrealistic option in this case, thereby confirming the impracticality of resolving their claims without use of the class action device.[43] Thus, the Settlement Class easily satisfies Rule 23(a)'s numerosity requirement.

### c.  Rule 23(a)'s Commonality Requirement is Satisfied.

Under Rule 23(a)(2), a district court may certify a class only when "there are questions of law or fact common to the class."[44] The key inquiry for evaluating commonality is whether a common question can be answered in a class-wide proceeding such that it will "drive the resolution

---

[40] *See, e.g.*, *Beaulieu v. EQ Indus. Servs., Inc.*, 2009 WL 2208131, at *8 (E.D.N.C. July 22, 2009) ("Residence in the [class area] should be readily determinable from public records" and may be proven using "leases, utility bills."); *see also Horn v. Gov't Emps. Ins. Co.*, 86 Fed. Appx. 405, 408 (10th Cir. 2004) (recognizing outside the context of class certification "standard documentary proof of residence, such as drivers' license, credit card mailings, tax returns, voting registration, or the like.").

[41] Fed. R. Civ. P. 23(a)(1).

[42] *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005).

[43] *See In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234-36 (4th Cir. 2021) (holding that when the proposed class is in the "gray area" between 20 to 40 members, "the district court should consider whether judicial economy favors *either* a class action or joinder.").

[44] Fed. R. Civ. P. 23(a)(2).

of the litigation."[45] Thus, even a single common question is sufficient to meet this Rule 23(a) requirement.[46]

This litigation involves numerous common issues, particularly as it concerns the alleged wrongful conduct of the Defendants. Common issues have similarly been identified in other environmental tort matters. For example, in *Hart v. J.H. Baxter & Co., Inc.*, homeowners residing near a wood preserving facility alleged that various chemical byproducts from the facility invaded their groundwater, soil, properties, and persons and brought suit for trespass, private nuisance, public nuisance, negligence, and gross negligence.[47] The Oregon district court found there was commonality because there were "many class-wide legal determinations that will require common evidence and involve common legal issues."[48] In *Rowe v. E.I. du Pont de Nemours & Co.*, the court found the commonality requirement was satisfied because there were "issues relevant to Plaintiffs' common law claims that are common to all Class Members, such as whether DuPont released PFOA from its Chambers Works Plant in New Jersey into the surrounding air and water."[49] Similarly, in *Sullivan v. Saint-Gobain Performance Plastics Corp.*, the court found commonality where "common *answers* to questions of liability" entailed "complex issues of chemistry, air

---

[45] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). *See also Comm'r*, 340 F.R.D. at 247-48 ("The commonality requirement—at least as it relates to a settlement class—is 'not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases.'").

[46] *Dukes*, 564 U.S. at 359.

[47] No. 6:21-cv-00663-MK, 2023 WL 2918632, at *1 (D. Or. Mar. 14, 2023).

[48] *Id.* at *3.

[49] 262 F.R.D. 451, 456 (D.N.J. 2009).

modeling, and hydrogeology, [because] the answers are common to all property owners and residents within the contamination zone."[50]

Just as in *Hart*, *Rowe*, and *Sullivan*, this action raises numerous common questions of both law and fact that will resolve important issues for the Plaintiffs and all Class Members. For this reason, Rule 23(a)'s commonality requirement is satisfied here.

### d. Rule 23(a)'s Typicality Requirement is Satisfied.

Typicality requires that class representatives' claims be "typical of the claims or defenses of the class."[51] Typicality is satisfied if a proposed class representative's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim."[52] Still, courts have emphasized that this "is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned."[53] Rather, typicality is satisfied where there is "a sufficient link" between a representative plaintiff's claims and those of absent class members where both allegedly suffered damages caused by the same product, arising out of the same alleged course of conduct by defendant, and based on identical legal theories.[54]

Here, the named Plaintiffs' claims for damages are typical and wholly aligned with the claims of the Class Members. Each seek recovery for damages which they alleged were caused by TRS emissions caused by the Defendants, including personal injury and nuisance damages, where applicable. This Settlement provides for determination of those damages by a Special Master, in

---

[50] 2019 WL 8272995, at *5 (D. Vt. Aug. 23, 2019) (emphasis in original).
[51] Fed. R. Civ. P. 23(a)(3).
[52] *Deiter v. Microsoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006).
[53] *Id.* at 467.
[54] *Comm'r,* 340 F.R.D. at 247-48.

accordance with the relative merit of these claims under South Carolina law.[55] Plaintiffs' claims for damages are typical of those of the Class for purposes of this settlement.

### e. Rule 23(a)'s Adequacy of Representation Requirement is Satisfied.

Rule 23(a)(4) requires that the "representative Parties will fairly and adequately protect the interests of the class."[56] This finding "requires the Court to determine: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the entire class."[57] This inquiry "tend[s] to merge" with the commonality and typicality criteria.[58]

The adequacy of representation requirement is satisfied here because Plaintiffs and Class Counsel have no interests antagonistic to the interests of the Settlement Class, no indicia of conflicts of interest exists, and Plaintiffs allege the same or similar harms as the absent Class Members. Further, Plaintiffs and Class Counsel have demonstrated a willingness and ability to vigorously prosecute the class claims as set forth in detail above.[59] Lastly, there is no basis for believing that Class Counsel did not adequately represent the interests of absent Class Members given their extensive experience in class actions, robust prosecution of the class claims in this litigation, and the results obtained in this matter.[60]

---

[55] *See* Ex. A.

[56] Fed. R. Civ. P. 23(a)(4). *See also 1988 Trust for Allen Children Dated 8/8/88*, 28 F.4th 513, 524 (4th Cir. 2022).

[57] *Parker v. Asbestos Processing, LLC*, No. 0:11-cv-01800-JFA, 2015 U.S. Dist. LEXIS 1765, at *24 (D.S.C. Jan. 8, 2015) (citations omitted).

[58] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

[59] *See id.*

[60] *See, e.g.*, *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2021 WL 248471, at *16 (D.S.C. Jan. 25, 2021) (finding Mr. Napoli would adequately represent the interests of absent members of a class comprised of residents of a community located in the vicinity of an AFFF manufacturing facility); *see also* Order and Opinion of this Court (ECF 4885),

For all these reasons, the Settlement satisfies Rule 23(a)'s adequacy of representation requirement.

### 2. The Requirements of Rule 23(b)(3) are Satisfied.

In addition to the requirements of Rule 23(a), the proposed Settlement Class must also satisfy the requirements of Rule 23(b)(3). "An acceptable type of class provided for by Rule 23(b) is where the class is superior to other methods of adjudication because common questions of law or fact predominate over those of individual class members ('superiority requirement')."[61] In making this determination, a court must consider: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action."[62]

Because a chief justification for class actions is efficiency, courts "must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court."[63]

"'Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.'"[64]

---

at 11 (noting that "[t]hroughout this litigation the Court has praised the quality of lawyering on both sides.").

[61] *In re Aqueous*, 2021 WL 248471, at *5.

[62] Fed. R. Civ. P. 23(b)(3).

[63] *In re Aqueous*, 2021 WL 248471, at *6 (citing 7AA Wright & Miller, Fed. Prac. and Proc. § 1779 (3d ed. 2005)).

[64] *Stillmock v. Weis Mkts., Inc.,* 385 F. App'x. 267, 273 (4th Cir. 2010) (quoting *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)).

Here, for the same reasons discussed in the preceding section, common questions predominate over any individual questions that the Class Members may have, particularly in the context of this settlement. Plaintiffs allege that they have been harmed by a common course of conduct by the Defendants, resulting in similar types of harm. While certain individual issues may exist for some Class Members, the nature and scope of the common questions in this case satisfy Rule 23(b)(3)'s predominance requirement.

In addition, the other factors the Fourth Circuit recognizes that favor class treatment over individual cases, weigh in favor of certification, including: (1) the absence of a strong interest for class members to pursue individual litigation, particularly when considering the expense, burden, risk, and length of trial and appellate proceedings involved; (2) the extent of litigation completed in connection with this matter by the Class Representatives; (3) the desirability to concentrate the litigation in the forum given its familiarity with the relevant issues; and (4) the degree of manageability of this litigation afforded by this Settlement, which is clearly preferable to continued and individualized litigation.[65]

Thus, the Settlement satisfies all the criteria necessary for class certification under Rules 23(a) and (b)(3). Having met these criteria, the Settlement Class should be approved.

### B. This Proposed Settlement Should be Approved under Rule 23(e)(2) as Rule 23(e)(2) and the Jiffy Lube Factors Support Granting Final Approval of the Settlement.

Rule 23(e)(2) requires that the district court determine that a proposed class settlement is fair, reasonable, and adequate prior to granting approval of the settlement.[66] In 1991, the Fourth Circuit in *In re Jiffy Lube Security Litigation* articulated four factors that a court should consider

---

[65] *Id*. at 275.
[66] *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991).

when making a fairness determination in order to ensure it was reached as a result of good-faith bargaining at arm's length, without collusion: (1) the posture of the case at the time the proposed settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) counsel's experience in the type of case at issue.[67] It also articulated an additional five factors to reference in evaluating the adequacy of the settlement.[68]

In 2018, Rule 23(e)(2) was amended to specify factors (in addition to those articulated by each Circuit) that a court should consider when determining if a proposed settlement is "fair, reasonable, and adequate."[69] Specifically, a court should consider whether:

> (1) the class representatives and class counsel have adequately represented the class;
>
> (2) the proposal was negotiated at arm's length;
>
> (3) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement [made in connection with the proposal, which is required to be identified under Rule 23(e)(3); and
>
> (4) the proposal treats class members equitably relative to each other.

An analysis of these relevant factors overwhelmingly favors final approval of the Settlement that is before the Court.

---

[67] *Id.*
[68] *Id.* at 159.
[69] Fed. R. Civ. P. 23(e)(2).

    **1. *The Settlement is Fair, Reasonable and Adequate Taking Into Account the Costs, Risks, and Delays of Trial and Appeals (Rule 23(e)(2)(C)(i)).***

Class Counsel submits that approval of the Settlement Agreement is in the best interests of the Class Members under all the conditions and circumstances of the case and is, therefore, fair, reasonable, and adequate. Accordingly, the parties respectfully request that the Settlement Agreement be approved. Eric D. Green, a mediator with decades of experience in class action cases and high stakes litigation, also the mediator who conducted multiple mediations in this matter, has submitted a declaration in connection with the approval of the class action settlement in this matter, opining that the settlement is a good result for the parties, and hard fought.[70] He opined in his declaration:

> Based on the facts and circumstances presented by the Parties and my experience in the mediation of class actions, it is my opinion that the settlement is a good result for the putative class that reflects the strenuous negotiations between highly professional counsel to secure a result for the class without the risks of continued litigation where their claims could have been denied at trial or on appeal. Similarly, Defendants made a responsible business decision to avoid further litigation that had the potential to expose them to a significant financial loss. All of this I attribute to exceptional and professional legal work on both sides. Both sides' counsel are among the most capable and experienced lawyers in the country in these kind of cases. Plaintiffs' Counsel took on an extremely risky and complicated case, invested a lot of time and resources, and achieved a good result for Plaintiffs and the putative class.[71]

    *a. The Advanced Posture of the Case at the Time of the Settlement Supports Approval of the Settlement (Jiffy Lube Fairness Factor 1).*

Here, "the cause [was] ready for trial," which ordinarily assures "sufficient development of the facts to permit a reasonable judgment on the possible merits of the case."[72] At the time of settlement, discovery had closed, and the Parties had litigated Motions to Dismiss, as well as

---

[70] *See* Declaration of Eric D. Green, Exhibit F.

[71] *Id*. at 6.

[72] *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod., Marketing, Sales Prac. and Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020); *see also Comm'r*, 340 F.R.D. at 249.

completed briefing and participated in hearings on Motions for Summary Judgment, motions to exclude expert witnesses pursuant to *Daubert* and Federal Rule of Evidence 702, and Plaintiffs' Motion for Class Certification.

Further, the Settlement was reached less than two months before the start of jury selection, at a point where the Parties were in the best posture prior to trial to evaluate the strengths, weaknesses, and litigation risks of proceeding to trial, and negotiate a fair and reasonable resolution. Thus, the first *Jiffy Lube* factor for evaluating fairness supports final approval of the Settlement.

> **b.** *The Extent of Discovery Conducted Supports Approval of the Settlement (Jiffy Lube Fairness Factor 2).*

At the time of settlement, discovery had closed, and the parties were prepared to proceed to trial. The Parties conducted extensive discovery, including 52 fact and expert depositions, a site inspection of the Mill, site inspections of the homes of class representatives, and the production and review of over 1,000,000 documents. As above, the Parties were fully informed about the nature of the claims and defenses that would be advanced at trial, and through continued motions practice, permitting the Parties to reach a fair, negotiated resolution. The second *Jiffy Lube* fairness factor weighs in favor of Final Approval of the Settlement.

> **c.** *The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B)) and There is No Existence of Fraud or Collusion Behind the Settlement (Jiffy Lube Fairness Factor 3).*

Settlement negotiations in this matter took place over multiple sessions and multiple days, over the course of years, facilitated initially by a private mediator retained by the parties, Eric D. Green, with final resolution occurring through two one-day mediation session with U.S. Magistrate Judge Shiva Hodges. Preliminary, exploratory settlement discussions in this matter began in November of 2022. The first mediation took place in September of 2023. By that time, the parties

were already well along in the development of their positions and had gathered a substantial volume of relevant evidence on critical elements of the claims at issue, as well as having undertaken substantial fact witness depositions on both sides of the case. Following that mediation, the parties continued to litigate their positions through expert discovery, including not only the exchange of 28 Rule 26 expert reports, but also expert depositions. This progressed to a second mediation in Boston, Massachusetts with Eric D. Green on December 6, 2023. Following this mediation the parties engaged in hard fought motion practice consisting of class certification, *Daubert* motions, motions *in limine*, and a motion for summary judgment on parent company liability. This fact discovery, expert discovery, and motions practice culminated in hearings before this Honorable Court in April of 2024. Accordingly, by the time of the final mediations in April of 2024 occurred, extensive and highly contentious settlement discussions had unfolded between the parties over the years.

This judicially overseen mediation session involved substantive and adversarial discussions on the merits of the case and resulted in an arms-length negotiated resolution. The adversarial nature of the negotiations and the aid provided by Judge Hodges are factors that weigh in favor of final approval and demonstrate that the Fourth Circuit's third factor for evaluating fairness supports final approval of the Settlement.[73]

> d. *Counsel's Experience in this Type of Case and Opinions Supporting the Settlement Weigh in Favor of Approval of the Settlement (Jiffy Lube Fairness Factor 4).*

---

[73] *See S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 345-46 (D.S.C. 1991) (although supervision "is not mandatory in order to determine a settlement is fair, such participation can insure that the parties will negotiate in good faith without collusion."); *see also Robinson v. Carolina First Bank NA*, 2019 U.S. Dist. LEXIS 26450, at *27 (D.S.C. Feb. 14, 2019) ("supervision by a mediator lends an air of fairness to agreements that are ultimately reached"); Fed. R. Civ. P. 23(e)(2)(B).

Class Counsel and Counsel for the Defendants have decades of experience litigating complex cases, including environmental and class actions. Appointed Class Counsel, Chase T. Brockstedt and Philip C. Federico of Baird, Mandalas, Brockstedt & Federico LLC; T. David Hoyle of Motley Rice LLC; and Richard A. Harpootlian of the Richard A. Harpootlian Law Firm, P.A. all have substantial experience in prosecuting and settling complex class actions, including those that involve environmental contamination or pollution. This Court has previously recognized their capacity to manage and oversee complex litigation by appointing all of them as interim class counsel.[74]

Because Plaintiffs and Defendants are represented by capable counsel who are experienced in complex, large-scale environmental litigation, their opinions supporting the settlement weigh in favor of granting final approval.[75] Indeed, courts have recognized that class counsel's experience in similar litigation allows for a realistic assessment of the merits of a claim and the desirability of a settlement.[76]

Accordingly, considering Class Counsel's broad knowledge of the facts surrounding this litigation, coupled with their extensive experience in class actions and resolving litigations involving similar issues, their endorsement of the Settlement supports final approval.

### 2. The Settlement Provides Adequate Compensation to the Class.

Defendants will pay $18 million into a Court-approved QSF to be distributed to Class Members. Following appropriate deductions for fees and costs as set forth in the Settlement

---

[74] ECF No. 46.
[75] *Robinson,* 2019 U.S. Dist. LEXIS 26450, at *13-*14, *18-*19; *Flinn*, 528 F.2d at 1173 (The opinion and recommendation of experienced counsel "should be given weight in evaluating the proposed settlement."); Fed. R. Civ. P. 23(e)(2)(A).
[76] *Bass v. 817 Corp.,* 2017 U.S. Dist. LEXIS 225380, *5-*6 (D.S.C. Sept. 19, 2017).

Agreement, those funds will be allocated equitably among Eligible Class Members under the Plan of Allocation.[77]

The Allocation Procedures were developed to allocate and distribute the Settlement Funds equitably among Eligible Class Members based on objective criteria under the supervision of a neutral master. This method of distribution more than adequately distributes the Settlement Fund and therefore supports final approval of the Settlement.

a. *The Strength of Plaintiffs' Case on the Merits and Defendants' Defenses Weigh in Favor of Approval of the Settlement (Jiffy Lube Adequacy Factors 1&2).*

Plaintiffs are confident in the strength of their allegations and supporting evidence, but success is never guaranteed. As is true with any case, "[p]laintiffs' ability to prevail on the merits is uncertain. The Settlement confers relief that might well not be achievable through continued litigation."[78] When reviewing the adequacy of a proposed settlement, "the court can assess the relative strengths and weaknesses of the settling parties' positions to evaluate the various risks and costs that accompany continuation of the litigation."[79]

Before the Settlement was reached, New Indy was fully cognizant of Plaintiffs' position, which helped drive the Settlement Amount agreed to by New Indy. The outcome of any case that is tried on the merits is, however, always uncertain and, for its part, New Indy took, and continues to take, the position that it has substantial legal and factual arguments, which also impacted the parties' negotiations.

---

[77] *See* Ex. A.
[78] *Gray v. Talking Phone Book*, 2012 U.S. Dist. LEXIS 200804, at *16 (D.S.C. Aug. 10, 2012).
[79] *Case v. French Quarter III LLC*, 2015 WL 12851717, at *8 (D.S.C. July 27, 2015).

As in many cases, uncertainty favors settlement because "hurdles to proving liability, such as proving proximate cause would remain and would necessitate expensive expert testimony."[80]

Notwithstanding Plaintiffs' confidence in the strengths of their case against New Indy, there were factual and legal questions in dispute that could potentially reduce any favorable jury award or restrict the ability of the class to proceed to trial in a manner that would have provided sufficient benefit to the class members. This was also a consideration in agreeing to the Settlement Amount.

Having presided over the Parties' briefing and argument on dispositive motions, this Court is familiar with the risks associated with continued litigation. These include pending motions to exclude certain expert witnesses, dispositive motions on the admissibility of health impacts and the liability of New-Indy Containerboard, as well as the risks attendant to resolution of contested factual issues before a jury. While the specific amounts awarded to class members will depend on the number of registered claims, even with 100% participation, this settlement will provide meaningful recoveries for damages attributable to nuisance and negligence for the owners of the estimated 2,428 properties, and the members of their households.[81]

Accordingly, these factors confirm that the Settlement is reasonable.

  b.  *The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Approval of the Settlement (Jiffy Lube Adequacy Factor 3).*

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."[82]

---

[80] *Comm'r*, 340 F.R.D. at 250 (internal quotation marks omitted); *In re LandAmerica § 1031 Exch. Servs. Inc. IRS § 1031 Tax Deferred Exch. Litig.,* 2012 U.S. Dist. LEXIS 97933, at *11-12 (E.D.Va. April 15, 2009) (where defendants "vigorously dispute the Plaintiffs' claims on numerous grounds," "their dispute underscores … the uncertainty of the outcome[.]"); *Stone*, 139 F.R.D. at 340 (settlement favored because the legal and factual issues posed a risk to both sides).
[81] While RG/2 Claims is still processing registrations, an estimated 2,816 individuals have registered for participation in this settlement.
[82] *See* 4 *Newberg on Class Actions* § 11.50 (4th ed.).

This settlement provides for the resolution of potentially thousands of claims in a highly complex environmental tort matter. Prior to this Settlement, Plaintiffs moved for class certification for the purpose of providing efficiencies to the litigation of these individuals' claims, which were pending at the time of Settlement. However, even if class certification was granted as requested, there would have remained individualized issues, which would have required additional litigation over a period of years. If class certification was denied, individualized litigation of these thousands of claims would require thousands of multiday, complex trials to establish liability and damages, requiring hiring testifying experts at extraordinary expense to the parties. Moreover, any judgments won following trial would likely be subject to lengthy appeals, whereas the Settlement provides more immediate results and benefits to Class Members.[83] Resolution of this matter through this Settlement resolves this matter for Class Members now, rather than years or even a decade or more into the future, as would be required if class certification were denied.

Even if the class were certified, litigating the cases would involve sophisticated factual, expert, and legal analysis. A liability determination from the jury would depend on the resolution of complex fact questions based on sophisticated scientific evidence, the outcome of which was uncertain. All of these uncertainties made settlement especially desirable.

> c. *The Insolvency Risk of the Defendants and Likelihood of Recovery on a Litigated Basis Supports Approval of the Settlement (Jiffy Lube Adequacy Factor 4).*

Plaintiffs alleged that both Defendant New-Indy Catawba, as well as its parent, New-Indy Containerboard, were liable for damages to residents around the Mill.[84] Asserting that there was no evidence of any tortious act undertaken, Defendants filed a Motion for Summary Judgment as to the

---

[83] *See Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) ("Accordingly, even after three and a half years of litigation, the road to recovery—particularly for the class as a whole— likely would be protracted and costly if the settlement were not approved.")
[84] ECF No. 6.

liability of New-Indy Containerboard; further averring that New-Indy Containerboard was not otherwise liable for any harm.[85] This Motion for Summary Judgment was pending at the time of Settlement. While Plaintiffs are confident that the evidence and argument demonstrated the liability of New-Indy Containerboard, as with any contested motion, there was a litigation risk that the Plaintiffs would be unable to establish liability on the part of New-Indy Containerboard, either at summary judgment, or before a jury. Under that circumstance, the Plaintiffs would be left to recover against New-Indy Catawba alone, which Plaintiffs asserted was insolvent, with liabilities well in excess of their assets.[86] This factor too weighs in favor of the adequacy of this Settlement. Accordingly, Plaintiffs submit the settlement is adequate, given the potential that Defendant New-Indy Containerboard may have been able to obtain summary judgment, and given the potential that New-Indy Catawba, as alleged by Plaintiffs, may have been unable on its own to satisfy a judgment in Plaintiffs' favor.

### 3. The Class Representatives and the Undersigned Class Counsel Have Adequately Represented the Class (Rule 23(e)(2)(A)).

Plaintiffs' Counsel have expended considerable resources and time in the research, investigation, and prosecution of this Litigation on behalf of the Class. Defense counsel fought the allegations in the matter with vigor. The Settlement was only reached after counsel, among other things: (a) conducted extensive investigation into the underlying facts, including all the allegations set forth in the Complaint, where investigation included, but was not limited to, interviews of witnesses with information concerning the Class's allegations; (b) thoroughly researched the law pertinent to the Class Members' claims and the defenses likely to be raised by Defendants; (c)

---

[85] ECF No. 227.

[86] See ECF No. 253. Defendants disputed these allegations.

successful opposed Defendants' multiple motions to dismiss; (d) consulted with many experts and served 20 Rule 26 expert reports; (e) conducted fifty-two (52) depositions; (f) engaged in comprehensive discovery, including voluminous document production and written responses; and (g) engaged in five days of mediation sessions with Defendants to efficiently resolve all claims. At the time the Settlement was reached, the Class and its counsel were fully cognizant of the strengths and weaknesses of the case, as well as the risks of continued litigation.

Here, the Class Representatives, both current and former, expended significant time and resources in the prosecution of this Class Action. Current class representatives were deposed by seasoned defense counsel, and many had their homes inspected by Defendants' air quality experts. Both current and former representatives were actively engaged and invested in the prosecution of this litigation and provided Class Counsel invaluable insights into both the specific areas in which they resided and the community at large. In the expenditure of their time, and the opening their personal histories, community engagement and access to their personal homes to the litigation process, the class representatives have represented their class well.

### 4. The Relief Provided is Adequate, Taking Into Account the Terms of Any Proposed Award of Attorneys' Fees (Rule 23(e)(2)(C)(iii)).

As discussed above, Class Counsel previously filed a Motion for Attorneys' Fees and Costs presently seeking attorneys' fees equal to 20% of the proposed class settlement amount, or $3,600,000.00, plus payment of reasonable litigation costs, which separately total $4,029,444.44.[87] The parties did not negotiate a particular fee amount for the class settlement. The award of any attorneys' fees or reimbursement of any cost shall be determined by the Court. Notably, not a single class member has raised any objection to the attorneys' fees sought by class counsel.

---

[87] ECF 356.

### 5. *The Relief Provided is Adequate, Taking Into Account Any Agreement Required to be Identified Under Rule 23(e)(3) (Rule 23(e)(2)(C)(iv)).*

Under Rule 23(e)(3), the parties to a proposed class settlement "must file a statement identifying any agreement made in connection with the proposal."[88]

The motion for preliminary approval identified the additional separate resolutions that will occur contemporaneously with the settlement of this class action case involving New-Indy Catawba and/or New-Indy Containerboard.

These include:

- *Butler et al. v. New-Indy Catawba, LLC et al.*, Civil Action No. 0:22-cv-02366-SAL, which alleged that the New-Indy defendants failed to obtain a necessary Prevention of Significant Deterioration ("PSD") permit when the Catawba Mill was converted from making bleach paper to making kraft paper.

- *Chin et al. v. New-Indy Catawba, LLC et al.,* Civil Action No. 0:23-cv-00602-SAL, brought under the Clean Water Act and the Resource Conservation and Recovery Act, against both of the New-Indy defendants, and alleges that pollutants, including dioxins and cobalt, have migrated or seeped from the unlined wastewater sludge lagoons into groundwater beneath the Mill and subsequently have been discharged into the Catawba River.

- A Motion to Intervene in *United States of America v. New Indy Catawba, LLC*, Civil Action No. 0:21-cv-02053 SAL seeking to intervene in the lawsuit filed by the USEPA against New Indy under the Federal Clean Air Act ("CAA").

Resolution of these three matters involve agreements on the part of New-Indy Catawba to engage in certain activities designed to reduce additional emissions of H2S and TRS, as well as efforts to prevent migration of dioxin and cobalt into the Catawba River. These activities include: (1) the installation of a new steam stripper, which will remove 98% of TRS from foul condensate; (2) restoring and modifying their existing steam stripper as backup capacity; (3) retrofitting the New-Indy Catawba recovery boiler to incinerate the condensed methanol, which will remove more

---

[88] Fed. R. Civ. P. 23(e)(3).

than 98% of TRS from the wastewater treatment system; (4) improving the structural integrity of three lagoons; and (5) capping two lagoons. The Parties estimate that the aggregate value of these separate commitments is expected to be at least $85 million for incurred and contracted costs, exclusive of long-term operation and maintenance and contingencies.

These remedies are not included as part of the Settlement Agreement, and in this matter Plaintiffs' Counsel is not requesting a legal fee, costs, or expenses in connection with the resolution of the *Butler*, *Chin*, or Intervention matters.[89]

### 6. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).

The relative equity of a settlement agreement is assed, *inter alia,* by consideration of "whether the apportionment of relief among class members takes appropriate account of difference among their claims . . . ."[90] The parties, with the guidance of developed Allocation Procedures, will allocate the Settlement Fund among all members of the Settlement Class taking into consideration objective criteria focused on five specifically defined Tiers. The Allocation Methodology provides for an initial calculation of damages, as determined by the following tiers, utilizing distance from the Facility as a proxy for exposure.

The Court-appointed Claims Administrator is experienced and adept at administering the Allocation Procedures neutrally and fairly. Taking the numerous relevant, objective considerations into account, the Allocation Procedures apportion the relief in an equitable fashion among differently situated members of the Settlement Class. Again, this was specifically fashioned to ensure equality between Class Members with varying types of claims.

---

[89] Legal fees, costs, and/or expenses related to these matters have been separately negotiated between the parties and will be paid in addition to any fee awarded by the Court in connection with this Class Settlement.

[90] Adv. Committee Notes, 2018 Amendments to Rule 23(e)(2)(C), (D).

***7. Given that there are no Objections and very small number of Opt-Outs, the Overall Reaction of the Class Overwhelmingly Supports Approval (Jiffy Lube Adequacy Factor Five).***

Notice was provided to 4,335 potential Class Members on June 21, 2024.[91] The Notice provided detailed instructions for how a potential Class Member could object to the proposed settlement.[92] The Notice advised Class Members of their right to exclude themselves from the Settlement, provided that their request be postmarked by August 5, 2024. To date, RG/2 Claims has received three (3) timely-filed Requests for Exclusion from the Settlement.[93]To date, RG/2 Claims has not received any objections timely filed with the Court. The very small number of opt outs likewise supports a finding of fairness. As of the time of this filing, only two opt-outs have been received by Plaintiffs' counsel. Of the approximate 4,333 class members, the data on opt-outs, to date, indicates overwhelming support for the settlement. Again, like Objections, a small number of opt outs weighs heavily in favor of a finding that the settlement is fair and adequate.[94]

Further, the named class representatives have executed a declaration, attesting to their support of the settlement.[95]  This factor likewise supports approval of the settlement.

---

[91] Ex. C.

[92] *Id.*

[93] *Id*. Copies of these Requests for Exclusion are attached to the Declaration of Melissa Baldwin, as **Exhibit D to that Declaration**. One timely filed opt out, filed by Lawrence Fuller, purported to opt out on behalf of all members of his household. These seven household members subsequently filed individual opt-outs, which were postmarked on August 9, 2024. *See id.*

[94] *See Kirven v. Cent. States Health & Life Co*., 2015 U.S. Dist. LEXIS 36393, *14 (D.S.C 2015) (stating that "an absence of objections and a small number of opt-outs weighs significantly in favor of a settlement's adequacy.").

[95] *See* Declarations of Named Class Representatives in Support of Settlement, collectively attached as Exhibit G.

## VI. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Unopposed Motion for Final Approval of Settlement and enter an Order[96] which, *inter alia*:

1. Grants Final Approval and Certification of the Settlement Agreement in its entirety, including the Settlement Class, as defined in Paragraphs 2-3 of the Settlement Agreement (ECF No. 350-1), and as preliminarily approved in Paragraph 3 of the Court's June 5, 2024 Order (ECF No. 352);

2. Specifies that the relief provided in the Settlement Agreement shall be the exclusive remedy available to all Participating Class Representatives and all Participating Class Members with respect to Released Claims, and the Releasees shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in the Settlement Agreement;

3. Specifies that the relief provided in the Settlement Agreement fairly and adequately remedies any harm arising out of or relating to Class Members allegedly caused by any Releasee that arises from or relates to any Released Claim;

4. Specifies that the Settlement Agreement is a good-faith settlement that, by operation of this Final Order and Judgment, has preclusive effect as to any other attempt to seek recovery from a Releasee for alleged harm to a Participating Class Member.

---

[96] For the Court's convenience, Class Counsel has prepared a Proposed Order Granting Final Approval, which, pursuant to the Court's Standard Preference No. 8, has been submitted via e-mail to lydon_ecf@scd.uscourts.gov concurrent with the filing of this motion and memorandum in support.

5. Specifies that the Settlement Agreement is enforceable according to its terms and is forever binding on all Participating Class Representatives, all other Participating Class Members, all other Releasing Parties, and Defendants;

6. Permanently enjoins all Participating Class Representatives and all Participating Class Members from challenging the validity of the Release or commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action or other proceeding, in any forum or jurisdiction (whether federal, state, or otherwise), or otherwise seeking benefits, based on or with respect to any and all Released Claims;

7. Specifies that, upon entry of the Final Approval Order, that *In Re: New Indy Emissions Litigation*, including the two underlying, consolidated cases, *White et al. v. New-Indy Catawba, LLC et al.*, Case No. 0:21-cv-01480-SAL *Kennedy et al. v. New-Indy Catawba, LLC et al.*, (D.S.C.), Case No. 0:21-cv-01704-SAL SAL (D.S.C.), shall be dismissed with prejudice; and

8. Such other relief as the Court deems necessary and appropriate.

Respectfully submitted,

By:      /s/ T. David Hoyle
Joseph F. Rice (Fed. ID No. 3445)
Fred Thompson, III (Fed. ID No. 4081)
T. David Hoyle (Fed. ID No. 9928)
W. Taylor Lacy (Fed. ID No. 9929)
Meredith Clark (Fed. ID No. 12075)
Rebecca Fonseca (Fed. ID No. 13297)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina 29464
(843) 216-9000
jrice@motleyrice.com
fthompson@motleyrice.com
dhoyle@motleyrice.com

wlacy@motleyrice.com
mkclark@motleyrice.com
rfonseca@motleyrice.com

Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No. 12816)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, South Carolina 29202
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

Chase T. Brockstedt
*Pro Hac Vice*
BAIRD MANDALAS BROCKSTEDT & FEDERICO LLC
1413 Savannah Road, Suite 1
Lewes, Delaware 19958
302-645-2262
chase@bmbde.com

Catherine M. Cramer
*Pro Hac Vice*
BAIRD MANDALAS BROCKSTEDT & FEDERICO LLC
2711 Centerville Rd., Suite 401
Wilmington, DE 19808
302-327-1100
ccramer@bmbfclaw.com


Philip C. Federico
Brent P. Ceryes
Matthew P. Legg
*Pro Hac Vice*
BAIRD MANDALAS BROCKSTEDT & FEDERICO LLC
2850 Quarry Lake Drive
Suite 220
Baltimore, MD 21209
410-421-7777
pfederico@bmbfclaw.com
bcereyes@bmbfclaw.com
mlegg@bmbfclaw.com

Thomas E Pope (Fed ID No. 4947)
Ben P. Leader (Fed ID No. 11923)
ELROD POPE LAW FIRM

P.O. Box 11091
Rock Hill, SC 29731
803-324-7574
tpope@elrodpope.com
bleader@elrodpope.com

Leonidas E. "Leon" Stavrinakis (Fed ID No. 6552)
STAVRINAKIS LAW FIRM
1 Cool Blow Street, Suite 201
Charleston, SC 29403
843-724-1060
leon@lawleon.com

Gary V. Mauney
To be admitted *Pro Hac Vice*
MAUNEY PLLC
Two SouthPark Center
6135 Park South Dr, Suite 510
Charlotte, NC 28210
704-945-7185
garymauney@mauneypllc.com

*Counsel for Plaintiffs*

Dated: August 14, 2024
Mount Pleasant, South Carolina