IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

|  |  |  |
|---|---|---|
| IN RE: NEW INDY EMISSIONS LITIGATION | ) ) ) ) ) ) ) ) ) | Case No.: 0:21-CV-01480-SAL 0:21-CV-01704-SAL **ORDER** |

1.      Before the Court is Class Counsel's Motion for Final Approval of Class Settlement and for Final Certification of the Settlement Class (the "Final Approval Motion," Case No. 0:21-CV-01480-SAL, ECF No. 358, Case No. 0:21-CV-01704-SAL, ECF No. 343), which seeks (1) Final Approval of the Settlement Agreement; (2) a finding that the Settlement Agreement is fair, reasonable, and adequate; (3) final certification, for settlement purposes only, of the Settlement Class pursuant to Federal Rule of Civil Procedure 23; (4) a judgment dismissing this case and providing for the dismissal of Litigation involving Released Claims brought by or on behalf of Class Members against the Releasees, and (5) a permanent injunction prohibiting any Class Member from asserting or pursuing any Released Claim against any Releasee in any forum.

2.      Also before the Court is Class Counsel's Motion for an Award of Attorneys' Fees and Costs, and an Award for Class Representatives Class (the "Fees & Costs Motion," Case No. 0:21-CV-01480-SAL, ECF No. 356, Case No. 0:21-CV-01704-SAL, ECF No. 341), which seeks (1) an award of 20% of the Settlement Amount as attorneys' fees; (2) reimbursement of Class Counsel's reasonable costs; and (3) reasonable service awards to current and former Class Representatives for their time and effort on behalf of the Class.

3.     WHEREAS, a proposed Settlement Agreement has been reached by and among the Class Representatives, Kenny N. White, Candice Cherrybone, Shane Nickell, Tracie Nickell, Amanda Swager, Shara Swager, Terri Kennedy, Marty Kennedy, Enrique Lizano, Sansanee Lizano, Melda Gain and Orrin Gain, by and on behalf of others similarly situated ("Plaintiffs" or "Class Representatives"),[1] and Defendants, New-Indy Catawba, LLC and New-Indy Containerboard, LLC d/b/a New-Indy Catawba (collectively, "Defendants");

4.     WHEREAS, the Court, for the purposes of this Final Order and Judgment, adopts all defined terms as set forth in the Settlement Agreement;

5.     WHEREAS, on June 5, 2024, the Court entered an Order granting preliminary approval to Settlement Agreement between Plaintiffs and Defendants, (the "Preliminary Approval Order," Case No. 0:21-CV-01480-SAL, ECF No. 352) that, among other things: (1) preliminarily approved the Settlement Agreement; (2) preliminarily certified the Settlement Class, for settlement purposes only; (3) approved the proposed notice and Notice Plan and directed that notice be disseminated to Class Members according to the Notice Plan; (4) appointed Class Counsel and Class Representatives; (5) scheduled Objection, Opt-out, and other deadlines and a Final Fairness Hearing; and (6) stayed and enjoined certain Litigation involving Released Claims;

6.     WHEREAS, on July 22, 2024, Plaintiffs submitted their Fees and Costs motion, Case No. 0:21-CV-01480-SAL, ECF No. 356, Case No. 0:21-CV-01704-SAL, ECF No. 341;

7.     WHEREAS, the Court received no Objections to the Settlement by the August 5, 2024 deadline;

---

[1] As per the Court's June 5, 2024, Order, the above-noted Plaintiffs have been appointed as Class Representatives. *See* ECF No. 352, ¶ 5. Unless otherwise defined or stated, all capitalized terms shall have the same meanings contained in the Settlement Agreement, ECF No. 350-1.

8.     WHEREAS, on September 5, 2024, the Court held the Final Fairness Hearing to consider the Final Approval Motion and any Objections to the Settlement;

9.     WHEREAS, no putative class member appeared at the Final Fairness Hearing to object to the Settlement;

10.     WHEREAS, the Court has considered all the presentations and submissions related to the Final Approval Motion and the Objections, including arguments of Class Counsel, Defendants' Counsel, and all other Persons who appeared at the Final Fairness Hearing, and having presided over and managed these proceedings since the Summer of 2021, and being familiar with the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith; and

11.     WHEREAS, the Court has considered all issues set forth in Class Counsel's motion for Fees and Costs;

12.     IT IS HEREBY ORDERED AS FOLLOWS:

## I.     Certification of Settlement Class

1.     Under Rule 23 of the Federal Rules of Civil Procedure, the Court certifies the following Settlement Class for settlement purposes only:

a.  All Persons who meet any of the following criteria:

   i.   during the period from January 31, 2021, until September 11, 2021, owned a single-family home located in whole or part within the Class Settlement Impact Area; or

   ii.  spouses or children of those who, during the period from January 31, 2021, until September 11, 2021, owned a single-family home located in whole or part within the Class Settlement Impact Area, and resided at that home for at least 30 days between January 31, 2021, until September 11, 2021; or

   iii. retained the representation of any one of Plaintiffs' Counsel in connection with alleged emissions from the Facility on or before April 25, 2024, as

3

set forth on the list attached as Exhibit B to the Class Action Settlement Agreement.

b.  Excluded from the Settlement Class are the following:

  i.  Defendants;

  ii.  any entity in which Defendants have a controlling interest;

  iii.  any Person with an ownership interest in Defendants;

  iv.  any current or former officer or director of Defendants;

  v.  any current or former employee of any Defendant with respect to any potential exposure during their employment by such Defendant;

  vi.  Persons who have entered into separate settlement agreements with any Defendant related to claims similar to those claims made in the Action; and

  vii.  the legal representatives, successors, or assigns of Defendants.

2.  The Court finds that the Settlement Class satisfies the requirements of Federal

Rules of Civil Procedure 23(a) and 23(b)(3) because, solely for settlement purposes:

a.  The Class Members are ascertainable and readily identifiable by, *inter alia,* reference to publicly available information, and the Class is defined using objective criteria to establish a membership with definitive boundaries, making the Settlement Class ascertainable pursuant to Rule 23(a), Fed. R. Civ. P.;

b.  The Class Members, of whom there are estimated to be approximately 6,000,[2] are so numerous that their joinder is impracticable, as per Rule 23(a)(1), Fed. R. Civ. P.;

c.  There are questions of law and fact common to the Settlement Class, particularly as it concerns the contested allegations of wrongful conduct on the part of the Defendants, such that commonality exists under Rule 23(a)(2), Fed. R. Civ. P. ;

d.  The claims of the Class Representatives are typical of the claims of the Class Members being resolved through the Settlement, consistent with Rule 23(a)(3), Fed. R. Civ. P., as the Class Representatives and Class Members are individuals that have asserted claims for actual or threatened injuries caused by alleged emissions from the Defendants' operations at the Mill.  In addition, Plaintiffs and the Settlement Class Members rely on the same common core of facts to allege that

---

[2] *See* Declaration of Keir Soderberg, PhD., ECF No. 350-9, providing an estimated total population based on census data.

Defendants' conduct led to adverse impact on their use and enjoyment of their properties;

e. The Class Representatives and Class Counsel have fairly and adequately represented and protected the interests of all Class Members, satisfying Rule 23(a)(4), Fed. R. Civ. P;

f. The questions of law or fact common to the Settlement Class, particularly those concerning the contested allegations of wrongful conduct on the part of the Defendants, predominate over any questions affecting only individual Class Members as is required under Rule 23(b)(3), Fed. R. Civ. P.; and

g. A class action is superior to other available methods for the fair and efficient resolution of the controversy, pursuant to Rule 23(b)(3), Fed. R. Civ. P., as the alternative to the efficiency achieved through the Settlement would be for federal judges adjudicate thousands of individual claims which are alleged to arise out of Defendants' alleged common course of conduct.

3.    The Court appoints the following plaintiffs as Class Representatives: Kenny N. White, Candice Cherrybone, Shane Nickell, Tracie Nickell, Amanda Swager, Shara Swager, Terri Kennedy, Marty Kennedy, Enrique Lizano, Sansanee Lizano, Melda Gain and Orrin Gain as Class Representatives.   The court preliminarily approved these Representatives in the Preliminary Approval Order.

4.    Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the Court confirms the appointment as Class Counsel of Chase T. Brockstedt and Philip C. Federico of Baird Mandalas Brockstedt & Federico LLC; T. David Hoyle of Motley Rice LLC; and Richard A. Harpootlian of the Richard A. Harpootlian Law Firm, P.A., who were preliminarily approved in the Preliminary Approval Order.

5.    The Court confirms the appointment of Judge Marina Corodemus of Corodemus & Corodemus, LLC as the Special Master for purposes of administering the Allocation Plan, as set forth in the Preliminary Approval Order.

6.     The Court confirms the appointment of the appointment of RG/2 Claims Administration LLC as Notice Administrator, Claims Administrator, and QSF Administrator, pursuant to the terms, conditions, and restrictions of the motion, the terms of the Class Settlement Agreement, and is confirms the grant of authority to RG/2 Claims Administration LLC to conduct any and all activities necessary to administer the QSF as described in the motion and Class Settlement Agreement, as set forth in the Preliminary Approval Order.

7.      The Court confirms the appointment of the appointment of Sandy Springs Bank as the financial institution that will hold the settlement funds, as set forth in the Preliminary Approval Order.

## II.     Settlement Approval

8.     Under Rule 23(e), FRCP, the court must approve a proposed settlement of the claims of a certified class.  Approval of such settlements are committed to the "sound discretion of the district courts to appraise the reasonableness of particular class action settlements on a case by case basis, in light of the relevant circumstances."  *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The court can only provide its approval "after a hearing and only on finding [the settlement] is fair, reasonable, and adequate . . . ."  Rule 23(e)(2).

9.     The "'fairness analysis is intended primarily to ensure that a "settlement is reached as a result of good-faith bargaining at arm's length, without collusion."'"  *1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022) (quoting *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015)).  The Fourth Circuit has identified four factors to guide our consideration of a proposed settlement's fairness: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the

class action litigation." *Id.* (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020)).  When the settlement is a result of arm's-length negotiations, there is a strong presumption the settlement is fair and reasonable.  *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–159 (4th Cir. 1991).

10.    As for adequacy, the Fourth Circuit has also identified factors the court must consider when assessing a class settlement's adequacy:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*1988 Trust for Allen Children*, 28 F.4th at 426 (quoting *Lumber Liquidators*, 952 F.3d at 484.) While these factors are similar to the factors the court considers when determining whether a settlement is fair and reasonable, "[t]he fairness prong is concerned with the procedural propriety of the proposed settlement agreement, while the adequacy prong focuses on the agreement's substantive propriety."  *In re Am. Capital S'holder Derivative Litig.*, 2013 WL 3322294, at *2 (D. Md. June 28, 2013).

11.    Finally, Rule 23 itself requires us to consider whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other.  Rule 23(e)(2).  In determining whether the proposed relief is "adequate," Rule 23 directs the court to take into account the following factors: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed

award of attorneys' fees, including timing of payment; and (4) any agreement made in connection with the proposal. Rule 23(e)(2)(C).

12.     Pursuant to Rule 23(e), Fed. R. Civ. P., and applicable Fourth Circuit case law, the Court concludes that the Settlement is fair, reasonable, and adequate. In support of that conclusion, the Court makes the following findings:

13.     First, the court concludes that Class Counsel and the Class Representatives have adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A), FRCP. Class Counsel vigorously represented their clients and the putative class members, opposing Defendants' motions to dismiss, conducting extensive fact and expert discovery, briefing and defending a motion for class certification, and briefing and defending multiple *Daubert* motions and motions for summary judgment. The current and former Class Representatives provided significant assistance to Class Counsel in prosecuting Plaintiffs' claims, providing access to their homes, assisting with community engagement, and assisting with discovery.

14.     The court also concludes the Settlement Agreement is the product of intensive, thorough, serious, informed, non-collusive, and arm's length negotiations. Counsel engaged in attempts to resolve Plaintiffs' claims at multiple points throughout the litigation. In November 2022, mediator Eric D. Green facilitated the parties' attempts at early mediation. The parties attempted their first mediation with Mr. Green over a period of two days in September 2023, after significant discovery occurred. The parties engaged in a second mediation with Mr. Green in December 2023, after fact and expert discovery closed and the parties filed initial class certification, *Daubert*, and summary judgment briefing. Finally, at the conclusion of a multi-day hearing addressing all pending motions—class certification, *Daubert*, and summary judgment— the parties resolved Plaintiffs' claims at the conclusion of a two-day mediation before United

States Magistrate Judge Shiva Hodges.  In sum, resolution of Plaintiffs' claims—like the litigation itself—was hard-fought and occurred over a period of at least two years.

15.     The relief provided to the Class Members is fair, reasonable, and adequate, taking into account the relative strength of the Class Members' and Defendants' cases, as well as the uncertainties of litigation on the merits; the risk, complexity, expense, and likely duration of the Litigation; the stage of the Litigation, including the factual record developed; the costs, risks, and delay of trial and appeal in the absence of settlement; the effectiveness of the proposed methods of distributing the Settlement Agreement relief to the Class Members; the terms and timing of the proposed fee award; and any agreement required to be identified under Rule 23(e)(3).

16.     The court here notes that it is familiar with the risks of continued litigation, having presided over a multi-day hearing addressing the parties' pending motions, which are legion: Plaintiffs' motion for class certification, Defendants' motions for summary judgment, the parties' respective *Daubert* motions, and the parties' respective motions in limine.  Those motions raised many factual and legal disputes which, as Plaintiffs note, could hamper a favorable jury reward or otherwise restrict Plaintiffs' ability to proceed to trial in a manner that would sufficiently benefit all Class Members.  That the parties resolved Plaintiffs' claims in a manner that avoids these risks provides a substantial benefit for Class Members, particularly in the face of a lengthy trial (or, if the court did not certify the class, many lengthy trials) and potential appellate process.

17.     The court also finds the Allocation Method is fair, reasonable, and adequate.  The Methodology, developed by Special Master Judge Maria Corodemus, ensures the Net Settlement Fund is allocated among Participating Class Members in an equitable manner using fair, reasonable, and administratively feasible criteria.  That Judge Corodemus has extensive experience

allocating damages in environmental tort matters only underscores the strength of the Allocation Methodology.

18.     The Settlement Agreement also treats Class Members equitably relative to each other.  As further discussed in the parties' settlement approval filings, the Allocation Methodology allows Judge Corodemus to allocate the Net Settlement Fund among Class Members based on objective criteria and by utilizing a thoroughly developed tiered system.

19.     The Settlement is also fair, considering the posture of the Litigation at the time settlement was proposed, the extent of discovery that had been conducted, the circumstances surrounding negotiations, and the experience of counsel in the area.  As discussed above, the parties  reached the Settlement  only after extensive, multi-year negotiations involving two different mediators, including a United States Magistrate Judge.  The court also notes the maturity of the case: discovery had long since concluded and the court had heard arguments on Plaintiffs' motion for class certification, the parties' respective *Daubert* motions, and Defendants' motions for summary judgment.  Indeed, at the time the parties reached the Settlement trial was less than two months away.

20.     The Settlement is also adequate, considering the relative strength of the Settlement Class's case on the merits, the existence of any difficulties of proof or strong defenses the Settlement Class is likely to encounter if the case were to go to trial, the anticipated duration and expense of additional litigation, the likelihood of recovery on a litigated judgment, and the degree of opposition to the Settlement.  The court here again notes that no putative Class Member, nor any other individual, submitted any objection to the Settlement.

21.     The Settlement amount is commensurate with the scale of the Litigation and the Settlement Class's chances of success at trial.

22.     The Court further concludes that the Settlement is in the best interests of the Class Members and is consistent with and complies with all applicable laws and rules.

23.     The Notice and Summary Notice were provided to Eligible Claimants as specified in the Notice Plan, including through direct mailing of the Long Form Notice, as per the Notice Plan.

24.     The Court concludes that the Notice and Summary Notice disseminated pursuant to the Notice Plan:

    a.   Were provided in accordance with the Preliminary Approval Order;

    b.   Constituted the best notice practicable under the circumstances;

    c.   Constituted notice that was reasonably calculated, under the circumstances, to apprise Eligible Claimants of:

        i.    The effect of the Settlement Agreement;

        ii.   The fact that attorneys' fees and costs would be sought by Class Counsel;

        iii.  Their right to submit a Request for Exclusion or to object to any aspect of the Settlement Agreement; and

        iv.   Their right to appear at the Final Fairness Hearing.

    d.   Constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the Settlement Agreement; and

    e.   Satisfied the requirements of Federal Rule of Civil Procedure 23, the United States Constitution (including the Due Process Clause of the Fifth Amendment), and other applicable laws and rules.

25.  The Class Representatives, Defendants, Class Counsel, and Defendants' Counsel have fully complied with the Preliminary Approval Order.

26.  Accordingly, pursuant to, and in accordance with, Rule 23, Fed. R. Civ. P., and other applicable laws and rules, the Court hereby fully and finally approves the Settlement in its entirety.

27.     The Settlement Agreement is enforceable according to its terms and is forever binding on all Participating Class Representatives, all other Participating Class Members, all other Releasing Parties, and Defendants.

28.     This matter, *In Re: New Indy Emissions Litigation*, including the two underlying, consolidated cases, *White et al. v. New-Indy Catawba, LLC et al.*, Case No. 0:21-cv-01480-SAL *Kennedy et al. v. New-Indy Catawba, LLC et al.*, (D.S.C.), Case No. 0:21-cv-01704-SAL SAL (D.S.C.), is hereby dismissed with prejudice.

29.     Upon Final Approval, all Participating Class Representatives and all Participating Class Members shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, waived, compromised, settled, and discharged the Releasees from each and every one of the Released Claims.

30.     Upon Final Approval, all Participating Class Representatives and all Participating Class Members are permanently barred and enjoined from challenging the validity of the Release or commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action or other proceeding, in any forum or jurisdiction (whether federal, state, or otherwise), or otherwise seeking benefits, based on or with respect to any and all Released Claims. Upon the Effective Date, the injunction set forth in this Paragraph shall supersede the stay and injunction set forth in the Preliminary Approval Order, as amended.

31.     The relief provided in the Settlement Agreement shall be the exclusive remedy available to all Participating Class Representatives and all Participating Class Members with respect to Released Claims, and the Releasees shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in the Settlement Agreement. The Court finds that the relief provided in the Settlement Agreement fairly and adequately remedies

any harm arising out of or relating to Class Members allegedly caused by any Releasee that arises from or relates to any Released Claim. The Court finds that the Settlement is a good-faith settlement that, by operation of this Final Order and Judgment, has preclusive effect as to any other attempt to seek recovery from a Releasee for alleged harm to a Participating Class Member.

32.     The Court finds that the Settlement is a good-faith settlement that bars any Claim by any non-Releasee against any Releasee for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that non-Releasee and paid or awarded to any Participating Class Representative or Participating Class Member by way of settlement, judgment, or otherwise on any Claim that would be a Released Claim were such non-Releasee a Releasee, to the extent that a good-faith settlement (or release thereunder) has such an effect under applicable law.

33.     To interpret, implement, administer, and enforce the Settlement Agreement and this Final Order and Judgment, the Court retains continuing and exclusive jurisdiction over:

a.   The Participating Class Representatives;

b.   The Participating Class Members;

c.   The Releasees;

d.   Judge Marina Corodemus of Corodemus & Corodemus, LLC, the Special Master for purposes of Administering the Allocation Plan;

e.   RG/2 Claims Administration LLC, the QSF Administrator, Notice Administrator, and Claims Administrator;

f.   Sandy Springs Bank, as the financial institution holding the settlement funds;

g.   The Settlement Agreement; and

h.   The Qualified Settlement Fund.

34.     In addition, the Participating Class Representatives, the Participating Class Members, and Releasees are hereby deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to, or in connection with the Settlement or this Final Order and Judgment.

35.     This Final Order and Judgment shall serve as an injunction enforceable by the Court for purposes of the Court's continuing jurisdiction related to the Settlement.

## III.     Attorneys' Fees, Costs, and Class Representative Service Awards

36.     The Court next addresses Class Counsel's Motion for an Award of Attorneys' Fees and Costs, and an Award for Class Representatives Class (the "Fees & Costs Motion," Case No. 0:21-CV-01480-SAL, ECF No. 356, Case No. 0:21-CV-01704-SAL, ECF No. 341), which seeks (1) an award of 20% of the Settlement Amount as attorneys' fees; (2) reimbursement of Class Counsel's reasonable costs; and (3) reasonable service awards to current and former Class Representatives for their time and effort on behalf of the Class.

37.     The Court also addresses the expenses incurred to-date and/or expected to be incurred by the Notice Administrator, Claims Administrator, and QSF Administrator as well as the expenses expected to be associated by the Special Master.

38.     The Court finds that Plaintiffs' Counsel's requested attorneys' fees of 20% of the Settlement Amount is reasonable and fair considering their efforts in creating a common fund for the benefit of the Class. The Court also denotes that Plaintiffs' Counsel's request utilizes the percentage-of-the-fund method that is favored by courts nationwide and by the *Manual for Complex Litigation. See e.g. Manual for Complex Litigation* § 14.121, at 187 (4th ed. 2004).

39.     The Court finds that Plaintiffs' Counsel's requested attorneys' fees are reasonable. First, Plaintiffs' Counsel have undertaken a "lodestar cross-check," the results of which shows a

lodestar far in excess of the requested fee award of $3,600,00.00, making that request particularly reasonable. *See e.g.* ECF No. 356 at 14-15.

40.     Additionally, the Court finds that Plaintiffs' Counsel's requested attorneys' fees are reasonable and appropriate when considering the factors set forth by the Fourth Circuit Court of Appeals in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

41.     With respect to the *Barber* factors, the Court first finds that Plaintiffs' Counsel's time and labor involved in obtaining the settlement supports the requested attorneys' fees. Plaintiffs' Counsel have marshalled considerable resources and time in the research, investigation, and prosecution of this Litigation on behalf of the Class. Moreover, the Settlement was only reached after counsel, among other things,

a. Conducted extensive investigation into the underlying facts, including all the allegations set forth in the Complaint, where investigation included, but was not limited to, interviews of witnesses with information concerning the Class's allegations;

b. Thoroughly researched the law pertinent to the Class Members' claims and the defenses likely to be raised by Defendants;

c. Successfully opposed Defendants' multiple motions to dismiss;

d. Consulted with many experts and disclosed 17 expert witnesses and served 17 Rule 26 expert reports;

e. Conducted fifty-two (52) depositions;

f. Engaged in comprehensive discovery, including voluminous document production and written responses; and

g.  Engaged in five days of mediation sessions with Defendants to efficiently resolve all claims.

42.     The Court finds that Settlement was reached at a time when the Class and its counsel were fully cognizant of the strengths and weaknesses of the case, and the risks of continued litigation, and the Court finds that Plaintiffs' Counsel were aggressive, efficient, and successful, resulting in a favorable monetary recovery for the Class. This factor therefore strongly supports approval of the requested fee.

43.     As to the second *Barber* factor, the Court finds the novelty and difficulty of the questions presented supports the requested attorneys' fees. Specifically, Plaintiffs' Counsel navigated complex legal issues, and achieved the common fund for the Class through extensive research, briefing, and advocacy despite the novelty and difficulty of the issues raised.

44.     Regarding the third *Barber* factor, the Court determines that Settlement was achieved by Plaintiffs' Counsel, who are well-regarded, experienced attorneys who engaged in a concerted effort to achieve a favorable resolution of this inherently complex class action litigation. Similarly, Defendants are represented by highly skilled and capable counsel from Morgan, Lewis & Bockius, LLP, Smith Robinson and McCoy Law Group.  The ability of Plaintiffs' Counsel to obtain a favorable settlement for the Class in the face of formidable defense counsel additionally justifies the requested attorneys' fees.

45.     In addition, the Court finds that Plaintiffs' Counsel's requested fee is reasonable and appropriate when considering the issue of customary fees, as discussed in *Barber*.

Here, the requested 20% of the Settlement attorneys' fee is supported by numerous fee awards within the Fourth Circuit.[3]

46.     Moreover, the Court finds the contingent nature of Plaintiffs' Counsels representation supports the requested fee.  A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement. *See Genworth*, 210 F. Supp. 3d at 844; *Phillips v. Triad Guar., Inc.*, 2016 U.S. Dist. LEXIS 60950, at \*19-\*20 (M.D. N.C. May 9, 2016). Plaintiffs' Counsel undertook to represent the Class on a contingent fee basis and prosecuted this Litigation for over three years while facing numerous difficulties, including dispositive motions, challenges to liability, causation and damages, disputes regarding the admissibility of experts, and litigating the case to the eve of trial. All of this was done with no guarantee of compensation and at cost commensurate with complex civil litigation of this type. Plaintiffs' Counsel committed significant resources of both time and advanced costs because such was necessary in a case such as this, if there was to be any recovery for either the Class or their Counsel. The contingent nature of Plaintiffs' Counsel's representation in this case strongly favors approval of the requested fee.

47.     In addition, the Court finds the amount involved and the results obtained supports Plaintiffs' Counsels' requested fee. Many courts, including the Supreme Court of the United

---

[3] *See McAdams*, 26 F.4th at 162 (approving a 43% fee of the common fund); *In re Lumber Liquidators*, 27 F.4th 291, 308 (4th Cir. 2022) (approving district courts awarding of 28% of common fund, over objectors); *Epstein v. World Acceptance Corp.*, No. 6:14-CV-01606-MGL, 2017 WL 11461887, at \*1 (D.S.C. Dec. 18, 2017) (awarding a fee of 30%, plus costs); *In re Merry-Go-Round Enters.*, 244 B.R. 327, 330 (D. Md. 2000) (holding that 40% negotiated contingency fee on \$185 million settlement was appropriate in bankruptcy context); *Helmick v. Columbia Gas Transmission*, No. 2:07-CV-00743, 2010 U.S. Dist. LEXIS 65808, at \*15 (S.D. W.Va. July 1, 2010) (awarding one-third of settlement fund in fees); *Hardwick v. Rent-A-Center, Inc.*, No. 3:06-CV-00901, slip op. (S.D. W.Va. Feb 3, 2006) (awarding fees of one-third of amount of settlement, plus costs). Thus, the requested fee is consistent with customary contingent fees in the private marketplace and supports a fee award of 20%, plus costs incurred.

States, have consistently recognized that the result achieved is one of the most important factors to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *see also In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and the end result achieved are of primary importance, for these are the true benefit to the client"). Here, a favorable and certain recovery of $18,000,000.00 has been obtained through the efforts of Plaintiffs' Counsels. This recovery, which will provide substantial and meaningful compensation for the Class Members, supports the awarding of the requested fee in this case.

48.     The Court also notes that as part of the Settlement, Defendants will undertake remedial efforts, which include: (1) installing a new steam stripper; (2) restoring and modifying the existing steam stripper to use for backup capacity; (3) retrofitting the Mill's recovery boiler; (4) improving the structural integrity of the three lagoons; and (5) capping the two lagoons. These remedial efforts will provide a value to Class Members of approximately $85 million. Considering many of Plaintiffs' allegations concerned alleged ongoing harms, Class Counsel's success in achieving these remedial efforts cannot be understated.

49.     Further, the Court finds the experience, reputation, and ability of Plaintiffs' Counsels supports the fee request. Plaintiffs' Counsel's successful efforts in efficiently bringing this Litigation against Defendants to a positive conclusion are the best indicators of the experience and ability of the attorneys involved. That Plaintiffs' Counsel have managed the Litigation in a disciplined and pragmatic fashion confirms that this Litigation was ably prosecuted for the benefit of the Class. As discussed above, Plaintiffs' Counsel are well regarded nationally for their successful representation of clients in class action matters. This factor supports the requested fee award.

50. Likewise, the Court finds the undesirability of the case supports the requested attorneys' fees and costs. Class action cases have often been recognized as "undesirable" due to the financial burden on counsel, and the time demands of litigating class actions of this size and complexity. *See, e.g. Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *41 (N.D. Okla. May 28, 2003) ("This case is…undesirable, in the way that all contingent fee cases are undesirable, because it produced no income, but has required significant expenditures"). This litigation was no exception, and the risk of no recovery remained high throughout the pendency of this Litigation. When counsel undertook representation of the Class here, it was with the knowledge that they would have to spend substantial time and financial resources, while facing significant risks and without any assurance of being compensated for their efforts. This "undesirability" of the litigation supports the requested fee.

51. All told, Plaintiffs—and the Class Members—were zealously represented by excellent counsel at every step of the Litigation. While the Litigation was hard fought the Court has repeatedly commended Class Counsel and Defendants' counsel on their ability to work together to move the Litigation forward. The Court has no doubt that such a beneficial result for the Class Members was achieved through Class Counsel's top-notch advocacy on behalf of their clients.

52. Given the foregoing, the Court finds that Plaintiffs' Counsel's requested fee of 20% of the settlement amount, equaling $3,600,000.00 is fair, adequate, and reasonable. The Court Orders hat, upon entry of this Order, RG/2 Claims Administration LLC, administrator of the Settlement Matter QSF, shall, disburse to Motley Rice IOLTA for distribution to Plaintiffs' Counsels in accordance with their written agreement, $3,600,000.00 on the following schedule: $500,000.00 as soon as practicable; $1,100,000.00 following Defendants' second payment as set

forth in paragraph 6 of the Class Action Settlement Agreement and Release; and $2,000,000.00 following Defendants' second payment as set forth in paragraph 6 of the Class Action Settlement Agreement and Release.

53.    Plaintiffs' Counsels have also sought reimbursement of reasonable, necessary costs incurred in prosecuting this action including hiring experts, travel, document review platform costs, mediating the Class's claims, court reporters and videographers, computerized legal research, and various other time-consuming activities commonly occurring in litigation. Payment of reasonable costs to counsel who create a common fund is both necessary and routine. The Court finds that Plaintiffs' Counsel's $4,029,444.44 in costs include hiring experts, travel, document review platform costs, mediating the Class's claims, court reporters and videographers, computerized legal research, and various other time-consuming activities commonly occurring in litigation were reasonable costs expended for purposes of prosecuting this Litigation and thus should be paid. Plaintiffs' Counsel's application for costs and fees also comports with the applicable local and federal rules.

54.    Consequently, the Court finds that Plaintiffs' Counsel's requested reimbursement for necessary costs incurred in creating the common fund for the Class, equaling $4,029,444.44, is fair, adequate, and reasonable.  The Court Orders that, upon entry of this Order, RG/2 Claims Administration LLC, administrator of the Settlement Matter QSF, shall, disburse $1,849,294.91 to Motley Rice LLC and $2,180,149.53 to Baird Mandalas Brockstedt & Federico, LLC as soon as practicable.

55.    Furthermore, Plaintiffs' Counsel have moved for the payment of service awards to current and former Class Representatives. Class Representative service awards (also called incentive payments) are "fairly typical in class action cases." *Berry v. Schulman*, 807 F.3d 600,

613 (4th Cir. 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). District Courts in the Fourth Circuit have permitted these awards without making a distinction between current and former representatives. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560 (E.D. Va. 2016).

56.    Service awards are meant to be reimburse class representatives for their time spent supporting the litigation, and courts look (a) reasonableness -with respect to the Representatives' participation in the litigation (e.g. depositions, discovery, public nature of litigation [possible reputational harm], etc.); and (b) fairness – to determine that the amount was not agreed to prior to settlement (if it was, could show bad incentives between reps and other class members) and whether the award is contingent upon agreeing to proposed settlement (if so, could be seen as negotiated in bad faith).

57.    Here, the Court finds that the Class Representatives, both current[4] and former,[5] expended significant time and resources in the prosecution of this Class Action. Current class representatives were deposed by seasoned defense counsel, and many had their homes inspected by Defendants' air quality experts. Both current and former representatives were actively engaged and invested in the prosecution of this litigation and provided Class Counsel invaluable insights into both the specific areas in which they resided and the community at large.

58.    For these efforts, the Court orders that, upon entry of this Order,  RG/2 Claims Administration LLC, administrator of the Settlement Matter QSF, shall, disburse $10,000 service

---

[4] The Current Class Representatives are as follows: Kenny N. White, Candice Cherrybone, Shane Nickell, Tracie Nickell, Amanda Swager, Shara Swager, Terri Kennedy, Marty Kennedy, Enrique Lizano, Sansanee Lizano, Melda Gain, and Orrin Gain.
[5] The Former Class Representatives are as follows: John Hollis, Krista Manus-Cook, Jean Hivanec, Kathleen Moran, Shirley Landsdown, Ethel Piercy. These individuals had various personal reasons for ending their representation of the Class, ranging from moving out of the area to simply no longer feeling as if they had the time and energy to participate in the action.

payments to current Class Representatives and disburse $5,000 service payments to former Class Representatives, as soon as practicable. The Court finds that these figures represent a fair amount for the work each individual put into this Litigation, not merely for the sake of themselves and their respective families, but for the neighbors, many of whom they will never know.

59.      Additionally, Plaintiffs' Counsel has moved for authorization to have certain administrative costs paid out of the common fund. Specifically, Plaintiffs' Counsels seek authorization for payment of (i) the $175,000.00 cost of the Special Master serving as Allocator, the Hon. Marina Corodemus (Ret.) of Corodemus & Corodemus, LLC; and (ii) the expected $275,000.00 cost of the QSF Administrator, Notice Administrator, and Claims Administrator services, all of which have been or will be provided by RG/2 Claims Administration LLC.

60.      The Court further finds that the proposed compensation to be paid to the Special Master serving as Allocator, the Hon. Marina Corodemus (Ret.) of Corodemus & Corodemus, LLC, is fair, reasonable, and necessary for administration of the Settlement Class. The Court therefore specifies that, upon entry of this Order, RG/2 Claims Administration LLC, administrator of the Settlement Matter QSF, shall, upon presentation of an invoice(s) by Judge Corodemus (Ret.) and approval of Class Counsel, issue payment(s) to Corodemus & Corodemus, LLC up to the amount of $175,000.00. Likewise, the Court finds that the amount to be paid to RG/2 Claims Administration LLC, who is serving as Claims Administrator and assisted counsel in effectuating notice, to be fair, reasonable, and necessary. The Court accordingly orders that RG/2 Claims Administration LLC, as administrator of the Settlement Matter QSF, shall upon presentation of an invoice and approval of Class Counsel, issue payment(s) up to the amount of $275,000.00.

61.      This Final Order and Judgment, the Preliminary Approval Order, the Settlement Agreement, and the documents, filings, and proceedings relating thereto, and any actions taken by

Defendants in the negotiation, execution, entry into, or satisfaction of the Settlement Agreement: (a) do not, and shall not be construed or interpreted to, admit or concede any liability or wrongdoing of Defendants, acknowledge any validity to the Claims asserted in the Litigation, acknowledge any scientific, medical, factual, or other basis asserted in support of any Claim, acknowledge that certification of a litigation class is appropriate as to any Claim, or acknowledge any weakness in the defenses asserted in the Litigation or any other suit, action, or proceeding; and (b) shall not be construed, deemed, or offered as an admission or concession by any Releasee or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including the Litigation), except (i) as required or permitted to comply with or enforce the terms of the Settlement Agreement, the Preliminary Approval Order, or this Final Order and Judgment, or (ii) in connection with a defense based on res judicata, claim preclusion, collateral estoppel, issue preclusion, relative degree of fault, release, or other similar theory asserted by any of the Releasees. If the Settlement Agreement does not become effective pursuant to its terms, Defendants retain full rights to contest certification of any class for litigation purposes.

62.    Without further approval from the Court, and without the express written consent of Class Counsel on behalf of the Class Members and Defendants' Counsel on behalf of Defendants, the Settlement Agreement is not subject to any change, modification, amendment, or addition.

63.    In the event that this Final Order and Judgment approving the Settlement Agreement is reversed on appeal, this Final Order and Judgment, the Preliminary Approval Order, and any other orders of the Court relating to the Settlement Agreement shall be deemed vacated, null and void, and of no further force or effect, except as otherwise provided by the Settlement

Agreement, and the Claims Administrator shall cause all funds in the QSF to be turned to Defendants within seven (7) days, as per Paragraph 8 of the Settlement Agreement.

64.    Finally, the Court commends Defendants for demonstrating their commitment to being responsible corporate citizens by addressing the environmental concerns raised in this Litigation and the related litigation matters.  The Court also acknowledges the vital work of Class Counsel and the residents of the area in safeguarding the natural beauty and resources of their state for future generations.

## CONCLUSION

For the reasons above, the court **GRANTS** the Class Counsel's Motion for Final Approval of Class Settlement and for Final Certification of the Settlement Class, Case No. 0:21-CV-01480-SAL, ECF No. 358, Case No. 0:21-CV-01704-SAL, ECF No. 343; and **GRANTS** Class Counsel's Motion for an Award of Attorneys' Fees and Costs, and an Award for Class Representatives Class Case No. 0:21-CV-01480-SAL, ECF No. 356, Case No. 0:21-CV-01704-SAL, ECF No. 341.

**IT IS SO ORDERED.**

*Sherri A. Lydon*

September 18, 2024                          Sherri A. Lydon
Columbia, South Carolina                  United States District Judge